## BEAGLEY v. UNITED STATES GYPSUM CO. et al.

No. 7302.   Decided September 9, 1949.   (209 P. 2d 750.)

See 67 C. J., Waters, sec. 774. Hypothetical questions to show character of property. See note, 77 A. L. R. 559. See, also, 20 Am. Jur. 689.

*Critchlow, Watson & Warnock,* Salt Lake City, for appellant.

*P. N. Anderson, James P. McCune,* Nephi, for respondent.

WADE, Justice.

Lewis Beagley, respondent herein, commenced this action to recover damages to a herd of turkeys he owned which he alleged was caused by the wrongful shutting off of water from a pipeline through which water for the turkeys was delivered to his ranch. From a judgment in favor of Beagley, the United States Gypsum Company and Ed. V. Downs appeal.

Appellant Ed V. Downs is the mine foreman of appellant United States Gypsum Company, a mining company. The United States Gypsum Company is a co-owner with Nephi City of the right to the use of a flow of water which originated in certain springs known as Rowley Springs. The United States Gypsum Company owned an undivided 1/6 of these waters and Nephi City an undivided 5/6. The water flows through a three inch pipe past the mine into a con-

crete box called a "breaker box." At this "breaker box"
the water is conveyed to respondent's turkey farm by means
of a 1½ inch pipe connected to it. Nephi City also has a
four inch pipe connected to this box through which the water
is taken into its mains. The mine took its water from the
pipeline by means of a two inch pipe which was about 4000
feet distant and considerably higher in elevation than the
"breaker box" from which respondent and the city took their
water. At a point about 3,750 feet above the "breaker box"
there is a shut-off valve in the pipe on an open mountain
side. On or about October 26, 1945, appellant Ed V. Downs,
as foreman of the mine ordered another employee to go to
this valve and give it a half turn which would have the
effect of at least shutting off part of the flow to the
"breaker box" and backing it up to the mine where it was
needed to test some pumps belonging to the mining com-
pany. On October 27, 1945, respondent discovered that no
water was coming through the pipes to his turkey farm.
When the cause for this stoppage of water was sought, it
was found that the water in the "breaker box" was only
about an inch above the outlet pipes of the city and respond-
ent. In investigating the cause of the lack of water in the
"breaker box" it was discovered that the water had been
turned off at the mine for about 45 minutes to permit it to
test the pressure of the pipes leading to the mine. Even
though the water had been turned back, respondent still
failed to receive any water through the pipes which lead
to his turkey farm. He, therefore, requested the City water-
master to come up and find what the trouble was. The
City watermaster discovered that the meters on respondent's
pipeline, the first of which was about 25 feet from the
"breaker box" and the second about 754 feet from the box,
both of which were below the elevation of the outlet from
this box, were stopped and were not turning. The City
watermaster cleaned out the first or upper meter on the
evening of October 27th and left. The next morning re-
spondent found that water still was not coming to his ranch
and recalled the City watermaster. This time the water-

master replaced the upper meter and when the water still did not go through, went down to the meter which was nearer to the ranch and took it out, but still the water did not come. He then took a wire and ran it into the pipe, removing some rust and corrosive materials and then the water began to flow through. The rust and corrosive materials found in the pipe were caused by the water which contained a large amount of lime which was deposited in the meters and pipes and which deposits, with the passage of time, caused these pipes and meters to become clogged. This clogging would set the discs in the meters with the result that less water would be able to came through. The pipes and meters were in this condition when the head of the water in the "breaker box" became so low that practically no water ran through the meters and the discs then became completely set and no water could come through thereafter even though the head in the box had been materially increased.

By the time the watermaster had made the repairs and achieved the desired results, a day and a half had passed and the turkeys had been without water all that time. According to plaintiff's evidence, this caused the turkeys to become very restless and nervous and to fly over the ranch fences to seek water. They found some stagnant water which they drank and some deleterious food and foreign vegetation which they ate, with the result that they went off their regular habits of feeding and thereafter a few hundred sickened and died and the remainder failed to gain normal weight and to process as highly as could otherwise have been expected from the type of feeding and raising they were getting.

The court found that appellants

"wilfully, unlawfully, negligently, and in reckless disregard and indifference of and for the rights of plaintiff, and in violation of the provisions of Section 103-59-2 of the Utah Code Annotated, 1943, and for purposes of defendants alone, and without any right so to do, turned and shut off the water flowing down through said 3 inch

City Pipe Line and the pipeline from said breaker box and to and unto said parcel of land and supply said turkeys, and permitted said water to be so turned and shut off for approximately five hours."

Appellants assign this finding as error for the reason that there is no evidence in the record to  justify it.

Sec. 103-59-2, U. C. A. 1943, provides that:

"Every person who, *in violation of any right of any other person,* willfully turns or uses the water, or any part thereof, of any canal, ditch, pipe line or reservoir, except at a time when the use of such water has been duly distributed to such person, or willfully uses any greater quantity of such water than has been duly distributed to him, or in any way changes the flow of water when lawfully distributed for irrigation or other useful purposes, except when duly authorized to make such change, or willfully and maliciously breaks or injures any dam, canal, pipe line, watergate, ditch or other means of diverting or conveying water for irrigation or other useful purposes, is guilty of a misdemeanor." (Emphasis ours.)

Respondent in seeking to sustain the judgment of the court argues that appellants' action in turning off the water was negligence per se because it violated the statute quoted above. If a violation of the above statute is negligence per se, still proof of such a violation is an essential element of respondent's case. The only evidence in the record as to the right to the use of the water is that the mining company and Nephi City were joint owners, the mining Company owning an undivided one-sixth and the City an undivided five-sixths of this water. How or when each was to use its share is not in evidence. The statute quoted above is a penal statute and expressly requires that there must be a violation of another's rights. That appellants had a right to the use of an undivided one-sixth of the water is not disputed. How and when this one-sixth was to be taken by appellants is not in evidence. The law does not assume that an act which may be rightful is wrongful in the absence of substantial proof to that effect. Even if appellants had turned off all the waters which ran into respondent's pipeline for

a short period of time, which they deny, nevertheless it is not shown that they did not have the right to so obtain their one-sixth of the water in that manner. Nor was there evidence of any arrangements between the City and the appellant mining company for the distribution of the water at such times and in such quantities that it could be inferred that the City had accorded to respondent a particular right to a definite flow of water at definite times, which right appellants had violated. Since it is apparent that respondent has failed to prove a material element of his case and that without such proof he cannot possibly be entitled to a judgment in his favor, it follows that the court erred in making the finding we have quoted above and the case will have to be reversed on that account.

Appellants assign a number of other errors pertaining to liability and proof of damages which we have examined and for the most part find without merit. However, there is one further question which requires discussion. Appellants had attempted to put on expert evidence ■ to the effect that the clogging of the meters and pipes would have caused the stoppage of the water without their act in turning the valve and shutting off the supply of water. To do so, appellants proposed a hypothetical question which did not include as one of its elements the fact that the water was turned off. The court said that without that fact included in the question, the answer would have little effect on it as the trier of the facts. Since the question as originally asked was an attempt to show that the setting of the meters and the clogging of the pipes were not caused by their shutting off the water for a short period of time but was really caused by the lime deposits and corrosion and that, therefore, the stoppage would have occurred regardless of their act, it was error for the court to indicate that the answer to the question would have no weight with it, this being a material issue in the case.

Reversed and remanded with instructions to grant a new trial and proceed in accordance with this opinion. Costs to appellants.

PRATT, C. J., and WOLFE, LATIMER and Mc-DONOUGH, JJ., concur.