432 P.2d 343

**Mary Louise GERARD, Plaintiff and Respondent,**

v.

**Preston L. YOUNG and Unice Young, Defendants and Appellants.**

No. 10712.

Supreme Court of Utah.

Oct. 3, 1967.

Bridwell & Rimensberger, George E. Bridwell, Salt Lake City, for appellants.

K. Samuel King, Salt Lake City, for respondent.

HENRIOD, Justice:

Action for termination of a cafe lease where allegedly gambling was being conducted, and where the court found this to be true, and a violation of a condition in the lease. Affirmed except as to damages, with costs to plaintiff.

This is a *civil*, not a criminal action. Gambling was the only issue in the case. Defendant denied the allegation,—not under oath. Thereafter in a deposition, *under oath*, he took the Fifth Amendment, admitting that the alleged gambling might incriminate him, which was inconsistent

with the denial in his pleadings. This left the sworn affidavits pointing to gambling, which affidavits further he refused to deny categorically.

■ The trial court should be affirmed. Otherwise, anyone sued on a promissory note could delay the day of judgment for two or three or more years by the simple device of taking the Fifth,—without fear of any perjury charge. .

■ The concurring opinion of Mr. Justice Ellett accurately states the facts in this case, which statement is adopted. We also adopt the conclusion of Mr. Justice Ellett, that factually and statutorily, the respondent is not entitled to treble damages, and that the trial court was in error in assessing such treble damages. The case is remanded with instructions to enter a judgment consonant with this decision, and to take evidence, if necessary, to assess damages, not trebled.

CALLISTER, J., concurs.

ELLETT, Justice (concurring in part):

I concur in part. Under our Rules of Civil Procedure a "summary judgment" shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Rule 56 [c]).

In this case plaintiff as landlord had leased to the defendants as tenants for a term of years a building in which the defendants conducted a cafe. The lease was written and provided that the leased property would be used as a restaurant and cafe only, and the tenants agreed to conduct the business strictly in compliance with law.

Plaintiff alleged in her complaint that defendants had violated the terms of the lease in that they maintained and operated a gambling house through the operation of money punchboards and pinball machines as gambling devices.

If gambling was conducted by means of such devices, it would be in violation of law and a breach of the terms of the lease.

The answer denied the allegations generally and by way of affirmative defense asserted:

If plaintiff proves that defendants maintained pinball machines as gambling devices and punchboards as gambling devices, which is denied, then and in that event such are not proscribed by statutes as the provisions of Title 76–27–1, 1953 Utah Code Annotated purporting to proscribe said devices is void and unconstitutional as being in violation of Article I, Sections 2 and 24 of the Utah State Constitution and the 14th Amendment to the United States Constitution in that

classification of said type devices and operation thereof is deemed to be a felony while operation of slot machines is deemed to be merely a misdemeanor and such classification is unreasonable.

The defendants moved for a summary judgment based upon their claim of invalidity of the law as set out in the affirmative defense.

Thereafter, plaintiff moved for summary judgment on the stated grounds that it was alleged in plaintiff's complaint that defendants had conducted gambling and had been given notice to cease and desist, yet continued to operate gambling devices. In connection therewith plaintiff filed the affidavits of three separate persons as follows:

First affiant stated:

1. [This paragraph gives residence of affiant.]

2. To my knowledge and observation defendant, Preston L. Young, has made cash payoffs to his customers, at Press Cafe, 890 West 2100 South, Salt Lake City, Utah, for the last year, when his customers have had winners on the punchboards, pinball machines, and "pull tab" spindle number drawings. During this past year, I worked at the "Cotton Club" which shares the same building with the "Press Cafe", and I saw many such payoffs by Defendant, Preston L. Young.

3. After April 12, 1966, 1 was in the Cotton Club, and through the window opening on to Press Cafe, I saw a customer, Eddie Davies, run up 100 games to his credit on a pinball machine, heard him ask defendant, Preston L. Young, to pay him off and saw defendant, Preston L. Young, hand him a $5.00 bill and clear the machine.

Second affiant stated:

1. [This paragraph gives residence of affiant.]

2. At 11:30 a. m. May 21, 1966, while seated in my car outside the front window of Press Cafe, 890 West 2100 South, Salt Lake City, Utah, I watched a customer, Max Shepard, play a punchboard in the cafe. He then went to the cash register. He handed no money to the defendant, Preston L. Young, but the defendant Preston L. Young handed to him two one-dollar bills. Mr. Shepard then came out of the cafe and I asked him why the defendant, Preston L. Young had given him the money and he told me that Mr. Young gave him the money for winning on the punchboard.

3. At 11:03 June 3, 1966, I was in the Cotton Club which is part of the same building as the Press Cafe. Through the connecting window I watched Eddie Davies play a pinball machine. He then walked to the counter, had a conversation with the defendant Preston L. Young, and said defendant then laid a five-dollar

bill on the counter which the said Eddie Davies picked up. Eddie handed nothing to the said defendant. I then went outside and met the said Eddie Davies as he came from the Press Cafe. I asked him where he got the money and he told me " 'Press' gave it to me for money I won on the machine." He then asked me if he would go to jail for gambling. Eddie Davies then said, "Pres told me that if I ever came to the counter to collect my winnings and he gave me a white card, it would mean that he was being watched and would pay me off later." The third affiant stated:

1. [This paragraph gives residence of affiant.]

2. During the morning of June 3, 1966, I was in Press Cafe, 890 West 2100 South, Salt Lake City, Utah, and watched Eddie Davies play a pinball machine there. Mr. Davies won a total of 105 games, played this down to 100 games to his credit on the machine, stopped playing and went to the counter. When he did this I stepped outside. Mr. Davies then came outside with a five-dollar bill. On being asked where he had got it, he said that the defendant, Preston L. Young had given it to him for his winnings on the pinball machine.

While there seems to be some hearsay in two of these affidavits, no motion was made to strike or otherwise prevent a consideration thereof, and by failing to object,

the defendants waived any objections thereto. See 6 Moore Fed.Pr., page 2817; 29 Am.Jur.2d, Evidence § 494. Aside from the hearsay statements, there are sufficient facts stated in the affidavits to require some sort of denial on the part of the defendants to make an issue regarding gambling. In attempting to raise the issue, the defendant Preston L. Young filed his affidavit as follows:

Defendant is not acquainted with the persons listed in plaintiff's affidavit who are alleged to have received "payoffs" at his place of business, and upon information and belief defendant alleges that persons making said affidavits and the persons alleged to have obtained "payoffs" are in concert and collusion with plaintiff in unlawful effort to obtain premature possession of the premises here in dispute, and defendant is entitled to obtain the testimony of those persons referred to in plaintiff's affidavit, under oath, and interrogate them and test their veracity and interest in the subject of this litigation to overcome the selfserving nature and hearsay characteristics in said affidavits contained.

Six days later he filed another affidavit as follows:

PRESTON L. YOUNG, being by me first duly sworn upon his oath, deposes and says: That he does not know Bryant Hanson or Larry Hanson, who executed affidavits attached to Plaintiff's Motion

for Summary Judgment in the case of Mary Louise Gerard vs. Preston L. Young and Unice Young, Civil No. 165151, and that he does not know Eddie Davies or Max Shepard, referred to in the said affidavits; *that he does not recall any of the events referred to therein, and therefore denies that he has made any of the alleged "pay-offs"*; that he knows Evan Holladay, and upon information and belief, alleges that he has a criminal record with possibility of felony conviction which would affect his credibility, and that he does not recall any of the events stated in his affidavit, and that to the best of his knowledge and belief, all of the statements pertaining to pay-offs are false. [Emphasis added.]

In fact, he was not forthright enough to say unequivocally that the statements of plaintiff's affiants were false. He hedged and said that to the best of his knowledge and belief the statements were false. Since those statements said *he* made the payoff, one would wonder about his knowledge and his belief.

His affidavit does not comply with Rule 56(e), which states:

Supporting and opposing affidavits *shall be made on personal knowledge,* shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. * * * [Emphasis added.]

If anyone had personal knowledge of whether the defendant made a payoff, he was the one, and yet he failed to state that he did not do it.

Even assuming that he said the statements were false, still he has done nothing more than make a conclusion somewhat in the nature of a *negative pregnant*; that is, he may think the affiants were not telling the truth when they said they saw many payoffs, for the reason that he thinks they saw only a few payoffs. He may think the statements are false when it was said gambling was seen at 11:30 a. m., when in truth and in fact he thinks it was 11:31 a. m. when they saw the gambling. To this day the defendant has never said that there was no payoff or gambling in his cafe, and if he is going to remain in court, under our Rules of Civil Procedure he must make an issue of that fact.

The deposition of the defendant Preston L. Young was taken, and every time he was asked anything about gambling, pinball machines, punchboards, and payoffs, he took refuge in the Fifth Amendment.

The burden was upon the plaintiff to show that no material issue of fact remained to be tried, namely, that the defendants did not overcome the affidavits stating that gambling was being conducted in the cafe. By claiming the privilege of the Fifth Amendment in that a true answer would tend to incriminate him, the defendant in

fact confessed that he conducted gambling in the cafe.

In McCormick on Evidence, page 163, § 80, the following statement is found:

> Under familiar principles an unfavorable inference may be made against a party not only for destroying evidence, but for the mere failure to produce witnesses or documents within his control. No showing of wrong or fraud seems to be required as a foundation for the inference that the evidence if produced would have been unfavorable. Why should not this same conclusion be drawn from the party's active interposing of a privilege to keep out the evidence?

In Note 1 on page 164 a list of cases pro and con is collected. The author discusses the reasons for the various holdings and then continues the article by saying, "One may hazard a guess, however, that in a secular sense privileges are on the way out."

If Mr. Young had not conducted gambling in his cafe, a truthful answer could not possibly have tended to incriminate him, for all he needed to do was answer, "No." To claim a privilege under the Fifth Amendment gives an inference as a matter of logic which cannot be denied. Statutes and judge-made rules may prevent comment by counsel and even the judge, but it cannot be thought that the trier of the fact could possibly ignore a matter so palpably clear and close his mind to the matter in its entirety.

The constitutional provision may not be set aside, but the only purpose was to make the State convict an accused person by evidence other than admissions of the defendant himself. It was not intended to allow a party in a civil action to escape civil liability by claiming the privilege. He need not incriminate himself, but he has no constitutional assurance that the jury must seal up their minds to the only reasonable inference which could be drawn from his failure to give evidence that would throw light upon the matter before the court. See Wigmore on Evidence, Third Edition, § 2254; 29 Am.Jur.2d Evidence § 494.

Some states have been more realistic in the matter as, for example, Massachusetts in the case of Phillips v. Chase, 201 Mass. 444, 87 N.E. 755, wherein it is stated:

> It is a rule of law that the objection of a party to evidence as incompetent and immaterial, and insistence upon his right to have his case tried according to the rules of law, cannot be made a subject of comment in argument. [Citations omitted.] On the other hand, if evidence is material and competent except for a personal privilege of one of the parties to have it excluded under the law, his claim of the privilege may be referred to in argument and considered by the jury, as indicating his opinion that the evidence, if received, would be prejudicial

to him. This is the rule where the party declines to answer a question on the ground that his answer may tend to criminate him. * * *

There is no quarrel with the claim that the defendant cannot be made to incriminate himself, but in a civil case when he has a duty to state a fact, he does not state that fact by claiming privilege. In the case of Albert v. Chambers, 335 Mich. 111, 55 N.W.2d 752, the defendant did not want to answer under oath certain allegations of the complaint given under oath lest the answer incriminate her. The Michigan Supreme Court at page 755 of the North Western Reporter said:

> That portion of the rule which deals with answers at law and in equity requires the defendants to answer the allegations of the declaration. However, those allegations may be either admitted or denied. If a material allegation in the declaration is not answered, the rule provides that it shall be taken as admitted.

To allow this defendant to remain in court under these circumstances would not be different from refusing to direct a verdict in a civil case where the plaintiff testified to facts showing the defendant had stolen hogs, and the defendant had refused to testify on the grounds that his answers would tend to incriminate him. Is there any reason to allow that case to go to the jury?

In protecting the constitutional rights of the defendant not to incriminate himself, we must not lose sight of the fact that the plaintiff also has a constitutional right, and that is to have his case decided under the law, and the rules should not be bent to protect a man who refuses to make an issue simply because to do so would tend to incriminate him.

The only issue which the trial court had to contend with in connection with plaintiff's motion for summary judgment was whether there had been a denial that gambling had been conducted in the cafe.

I think that we ought not concern ourselves with the motives which may or may not have prompted the plaintiff to bring the matter before the court, nor should we look to see who might win if a sympathetic jury could look at the motives of a party. We are concerned solely with the proposition of whether there is a genuine issue of fact to be determined. If there is no genuine issue of fact to be determined, there is no reason to weigh testimony regarding it.

However, I do not think at this stage of the proceedings there can be a determination of the amount of damages by way of the reasonable rental value of the cafe since the time when the defendant became in unlawful detention. The court had no evidence before it to warrant a finding thereon. At trial it may be that the amount of

the rental stated in the lease agreement would be evidence of the reasonable rental value of the property, but it is not necessarily the correct amount. Many factors might have intervened to make the rental value more or less than the contract price.

There are other reasons why the trial court could not grant treble damages. In the first place, for a plaintiff to bring his case under the Forcible Entry and Detainer statute, he must have the court to endorse upon the summons the number of days within which the defendant shall be required to appear and defend the action, which shall be not less than three or more than twenty days from date of service. (Section 78–36–8, U.C.A.1953.)

The record does not show that the statute was followed in this regard, and, if not, then the plaintiff is in court on a suit to cancel the lease and get actual damages only and not to have the same trebled.

In the second place, the plaintiff cannot recover damages here even if she had complied with the Forcible Entry and Detainer statute for the reason that Section 78–36–10, U.C.A.1953, provides:

If upon the trial the verdict of the jury, or if the case is tried without a jury, the finding of the court, is in favor of the plaintiff and against the defendant, judgment shall be entered for the restitution of the premises; and if the proceeding is for unlawful detainer after neglect or failure to perform any condition or covenant of the lease or agreement under which the property is held, or after default in the payment of rent, the judgment shall also declare the forfeiture of such lease or agreement. The jury, or the court if the proceeding is tried without a jury, shall also assess the damages occasioned to the plaintiff by any forcible entry, or by any forcible or unlawful detainer, and any amount found due the plaintiff by reason of waste of the premises by the defendant during the tenancy, alleged in the complaint and approved on the trial, and find the amount of any rent due, if the alleged unlawful detainer is after default in the payment of rent; and the judgment shall be rendered against the defendant guilty of the forcible entry, or forcible or unlawful detainer, for the rent and for three times the amount of the damages thus assessed. * * *

No finding can be made by a trial court on summary judgment except "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Rule 56 [c], U.R.C.P.) Since the court could not find from the record before it what the reasonable rental value was, it could not have made a finding thereon.

I would, therefore, affirm the summary judgment granted by the trial court insofar as it cancelled the lease and determined

the amount of rent due up to the time of the unlawful detention. I would remand the case for the taking of evidence as to the reasonable rental value since unlawful detention with direction to the court to enter judgment for the amount of the reasonable rental value so found. This amount should be credited with the $1500 paid in advance by the defendant for the last five months of the lease period.

CROCKETT, Chief Justice (dissenting):

I cannot agree with the court's decision. An analysis will show with unmistakable clarity that its effect is to turn the defendant's claim of privilege under the Fifth Amendment into a conclusive presumption that he was guilty of gambling, which charge he denied under oath in his affidavit; and that this deprives him of his right of trial of that issue by jury, for which he made a timely demand.[1]

Summary judgment depriving the defendant of his right to a trial is justified only if the record, viewed in the light most favorable to him, shows clearly that even upon a trial, judgment would necessarily go against him. Accordingly we should not treat this case as though there had been a trial and the issues resolved in favor of the plaintiff as, it seems to me, is done in the main opinions.[2] Instead this record should be analyzed in the light most favorable to the defendant to ascertain whether there is any genuine dispute as to a material and controlling issue of fact, and if there is, that issue should be determined upon a trial; and in case of doubt it should be resolved in favor of allowing the party the privilege of a trial.[3]

The basis of the plaintiff's asserted right to evict the defendant was that he had permitted gambling on the premises in violation of the terms of the lease and of the law.[4] The defendant's answer denied any violation of either. He asserted that the plaintiff's real motive for trying to evict him was that the American Oil Company had offered twice the rental he paid, and had in fact advanced $1500 in consideration of her promise to evict the defendant. The plaintiff filed three affidavits relating to alleged payoffs on pinball machines and punchboard games by the defendant. In opposition to them the defendant filed an affidavit stating that he " * * * does not recall any of the events referred to * * * and therefore denies that he made any of the alleged 'pay-offs,' " and that, " * * * all of the statements pertaining to pay-offs are false."

1. As to assurance of trial by jury under our law see Art. I, Sec. 12, Utah Constitution, and U.R.C.P. Rule 83.
2. The concurring opinion is incorporated by reference into the main opinion.
3. See Strand v. Mayne, 14 Utah 2d 355, 384 P.2d 396; Thompson v. Ford Motor Co., 16 Utah 2d 30, 385 P.2d 62.
4. Utah Code Annotated, 78–36–3 (1953).

It surely cannot be gainsaid that at that point the defendant had denied the critical issue, the charge of gambling. *The trial judge himself so concluded and quite properly denied plaintiff's motion for summary judgment at that point.* The question of concern here has arisen because when the defendant's deposition was thereafter taken, in response to questions about gambling activities, he claimed privilege against self-incrimination and declined to answer.[5] The result of this, the way I see it, was to say in effect: I have told you I have no recollection of any such thing and have denied under oath your claim of gambling. The burden is upon you to prove your own case. To your attempt to prove it by me, I decline to furnish you any information, and stand on the privilege which is mine under the Constitution.

In order for the trial court to justify rendering judgment against the defendant at this point, it must conclude that the record compels a finding that the defendant was guilty of gambling. The only possible basis for such a ruling would be to draw a conclusive presumption of that fact from the defendant's claim of his privilege. This position essayed by the plaintiff, that by claiming his privilege the defendant con-

fessed that he had conducted gambling at the cafe, is unsupportable.

The United States Supreme Court is of course the final arbiter of rights assured under the Federal Constitution.[6] In numerous cases it has confronted and dealt with the effect of asserting the Fifth Amendment privilege. It spoke on the subject with unequivocal certainty in the case of Slochower v. Board of Higher Education of the City of New York,[7] which involved a schoolteacher who had been dismissed because he invoked the Fifth Amendment when questioned by a congressional committee. The Board had contended that the teacher was either (a) guilty of crime, or (b) guilty of perjury for falsely invoking the privilege. The court rejected this contention and said:

At the outset *we must condemn the practice of imputing a sinister meaning to the exercise of a person's constitutional right under the Fifth Amendment. * * In Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497 [100 L.Ed. 511], we scored the assumption that those who claim this privilege are either criminals or perjurers. The privilege against self-incrimination would be reduced to a hollow mockery if its exercise could be taken as equiv-*

---

5. Sec. 12 of Art. I of the Constitution of Utah and Fifth Amendment to the U. S. Constitution.

6. That the Fifth Amendment is binding on the States, see Malloy v. Hoggan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653.

7. Slochower v. Board of Higher Education of City of New York, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692.

*alent either to a confession of guilt or a conclusive presumption of perjury.* As we pointed out in Ullmann, *a witness may have a reasonable fear of prosecution and yet be innocent of any wrongdoing. The privilege serves to protect the innocent who otherwise might be ensnared by ambiguous circumstances.*

The problem was dealt with again just this year in another civil proceeding.[8] A New York lawyer was disbarred for his refusal to produce records and testify at a judicial proceeding, claiming the Fifth Amendment privilege. The Supreme Court reversed, saying:

> * * * the Self-Incrimination Clause of the Fifth Amendment * * * should not be watered down by imposing the dishonor of disbarment and *the deprivation of a livelihood as a price for asserting it.* * * *

We said in Malloy v. Hoggan:

> "The Fourteenth Amendment secures against state invasion the same privilege that the Fifth Amendment guarantees against federal infringement—the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his *own will, and to suffer no penalty * * * for such silence.*" 378

U.S., at 8, 84 S.Ct., at 1493, 12 L.Ed.2d at 659.

In this context *"penalty" is not restricted to fine or imprisonment.* It means, as we said in Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, *the imposition of any sanction which makes assertion of the Fifth Amendment privilege "costly."*

There are numerous other examples where forcing a party to answer, or forfeit a right or property, has been held to violate the Fifth Amendment. In Boyd v. United States,[9] forfeiture of goods. Garrity v. State of New Jersey,[10] police officers to be removed from office if they refused to give information about an alleged fixing of traffic tickets. If the cases hereinabove referred to are sound: that property may not be forfeited, a police officer or schoolteacher may not be discharged, or an attorney be disbarred, for invoking the Fifth Amendment privilege, all in noncriminal proceedings, then how can we justify summarily finding the facts against the defendant here without a trial, and deprive him of his cafe which is his means of livelihood solely because he invoked the Fifth Amendment privilege.

The court's decision cites certain authorities as supporting its conclusion. In

8. Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967), overruling Cohen v. Hurley, 366 U.S. 117, 81 S.Ct. 954, 6 L.Ed.2d 156 (1961).

9. 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746.

10. 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed. 2d 562 (1967).

order to avoid burdening this opinion and the printed page with a lengthy exposition on each of those authorities, I say this advisedly and categorically: Those authorities as cited do not deal with the same question involved here, and they do not support the proposition that because defendant invoked the Fifth Amendment he must be presumed guilty of the conduct charged and that consequently there is no longer any dispute on that issue. Upon examination it will be found that insofar as they touch close to the question here involved, they stand for a proposition with which I am in full accord: that in a civil case, where a party invokes the Fifth Amendment privilege, it is a circumstance which, *upon a trial,* the court or jury may consider in connection with all other evidence, and may draw an inference adverse to that party's interest if they so desire.[11]

A reading of a little further into Section 80 of McCormick on Evidence, cited by the majority, and to the cases which are

referred to in that text, will show that the question there considered is not whether the court on summary judgment *must* find the privilege claimer guilty of misconduct, but whether the court or jury, as fact finder, *may* draw the adverse inference. But none goes so far as to say that the claiming of the privilege establishes absolutely that the party is guilty of the conduct about which he is questioned. Insofar as we have been able to find by our research, there has never been a case which has sustained a ruling that a party is defeated on summary judgment for claiming the privilege, nor where a court has said that the inference *must* be made, nor have we even found a case where going to any such extreme has even been urged.[12] If there is any such authority, we would be glad to be enlightened by citation to it by the majority in support of their position.

There are other aspects of this case which argue persuasively the propriety of affording the defendant the opportunity of a trial

11. See also In re Ratner, 194 Kan. 362, 399 P.2d 865; Buzard v. Griffin, 89 Ariz. 42, 358 P.2d 155; Bowe v. Palmer, 36 Utah 214, 102 P. 1007; and see 25 Am.Jur.2d, Evidence Sec. 178.

12. The closest thing we have found is in cases where a *plaintiff* has brought an action and then refused discovery on the basis of the Fifth Amendment privilege, and the court has justified sanctions such as striking his pleadings, finding the facts against him, or entering his default. See Abramowitz v. Voletsky, 47 Misc.2d 626, 262 N.Y.S.2d 991; Barbato v. Tuosto, 38 Misc.2d 823, 238 N.Y.S.2d 1000; Levine v. Bornstein, 13

Misc.2d 161, 174 N.Y.S.2d 574, affirmed 7 A.2d 995, 183 N.Y.S.2d 868, affirmed 6 N.Y.2d 892, 190 N.Y.S.2d 702, 160 N.E.2d 921. These rulings were based on the ground that it wouldn't be fair to allow him to sue and then refuse to talk. (See Rule 37(b) and (d) U.R.C.P.) But even in those cases from the expression of the judges it will be seen that all agreed that such sanctions could not properly be applied against a *defendant* who is brought involuntarily into court, because this would place him in the precarious position of either having to confess judgment or give up his privilege.

42

rather than to cast him out without a hearing. The affidavits filed by the plaintiff are not to my mind in and of themselves sufficient to *compel* a finding that defendant was gambling. They relate to certain observations about the playing of a pinball machine and the defendant handing over money at the cash register, plus some hearsay statements overheard by affiants. It is true that if these affidavits stood unassailed, they would *permit an inference* and thus a finding of the gambling. On the other hand, it is also true that if the inadmissible hearsay recited in the affidavits is disregarded, reasonable minds might well remain unconvinced that the defendant was gambling. This is particularly so when it is remembered that even in a civil case, where the act necessary to establish a cause of action would amount to a crime, it is usually held that the proof required must be clear and convincing.[13]

The other aspect of the case bearing on the conclusion herein advocated is that in the defendant's answer and in his affidavit denying the alleged payoffs he injected certain other elements touching upon the questionable character, the interest, and the motives of plaintiff's affiants in an alleged collusion with her to cancel the defendant's lease, which a jury might regard as casting serious doubt upon their credibility. This

also argues cogently against the propriety of ruling that the record compels a finding against the defendant without trial.

Upon the basis of this record as it presently stands, and in the light of the law as discussed herein, it is my opinion that the defendant is entitled to have the trial by jury in accordance with his demand. (All emphasis added.)

TUCKETT, J., concurs in the dissenting opinion of CROCKETT, C. J.

---

13. See Boyle v. Baggs, 10 Utah 2d 203, 350 P.2d 622; 20 Am.Jur., Evidence, Sec. 229; Beagley v. United States Gypsum Co., 116 Utah 337, 209 P.2d 750;

Bowler v. Vannoy, 67 Nev. 80, 215 P.2d 248, petition for rehearing denied, 67 Nev. 80, 216 P.2d 274.