2001 UT App 347

**PARKSIDE SALT LAKE CORP.,**
**Plaintiff and Appellee,**

v.

**INSURE–RITE, INC., Defendant**
**and Appellant.**

**Insure–Rite, Inc., Third–Party**
**Plaintiff and Appellant,**

v.

**Collin Perkins, and Wallace & Assoc.,**
**Third–Party Defendants and**
**Appellees.**

No. 20000588–CA.

Court of Appeals of Utah.

Nov. 16, 2001.

John Martinez and Nick J. Colessides, Salt Lake City, for Appellant.

John E. Robson, J. David Pearce, Fabian & Clendenin, Greggory J. Savage, Matthew N. Evans, and Christine T. Greenwood, Holme Roberts & Owen LLP, Salt Lake City, for Appellees.

Before JACKSON, Associate P.J., and DAVIS and ORME, JJ.

## OPINION

ORME, Judge.

¶ 1 Insure–Rite, Inc. (Tenant) appeals from an order of summary judgment evicting it from premises it leased from Parkside Salt Lake Corporation (Landlord) and awarding Landlord treble damages under the unlawful detainer statute. Tenant also appeals the summary dismissal of its counterclaims and third-party claims, as well as the trial court's award of attorney fees and costs to Landlord. This dispute arose from Tenant's effort to exercise an option to extend a lease and Landlord's effort to increase the rental rate during the extended term. The pivotal issue on appeal is whether the summons was adequate to confer jurisdiction over Tenant where the court shortened the answer time by separate order rather than on the face of the summons. We hold that the trial court lacked personal jurisdiction over Tenant and thus vacate the trial court's orders.

## BACKGROUND

¶ 2 On February 24, 1997, Landlord and Tenant signed an agreement for Tenant's lease of commercial office space in Landlord's office building in downtown Salt Lake City. Under the agreement, Tenant leased 5,037 square feet at an annual rental rate of $16.15 per square foot. The lease term began May 1, 1997, and was to expire on June 30, 1998. The agreement also contained the following "Option to Extend":

Provided Tenant has not defaulted under this Lease, and that this Lease is in full force and effect at the time Tenant exercises the option to extend as provided herein, then Tenant shall have the option (the "Option to Extend") to extend the term of this Lease for an additional period of three (3) years (the "Extension Term"), upon the same terms and conditions except Basic Rent shall be adjusted to the then prevailing market rates, commencing on the day after the Expiration Date of this Lease. The Option to Extend must be exercised by written notice delivered by Tenant to Landlord at any time prior to March 1, 1998. Thirty days after Tenant notifies Landlord it is exercising its option, Landlord must provide Tenant with written notice of the new rental. "Market rate", as used by Landlord to determine the new Basic Rent, shall be the rental rate for comparable space of comparable size for a similar term for a similar credit-worthy tenant by reference first to the Building and second to the other similar buildings in downtown Salt Lake City. Tenant may reject the new rental rate for a period of 30 days following notice from the Landlord, at which time Tenant's exercise of its Option to Extend shall be null and void. If Tenant does not notify Landlord within 30 days of Landlord's notice to Tenant of the new rental rate, the Tenant shall automatically be deemed to have accepted the market rental rate in the notice.

¶ 3 On February 6, 1998, Tenant provided Landlord with timely written notice of its exercise of the Option to Extend. In response, Landlord promptly delivered to Tenant a "lease renewal proposal." Landlord's proposal called for annually escalating rental rates over the three-year extension term— $17.50 per square foot the first year, $18.00 per square foot the second year, and $18.50 per square foot the third year. Landlord's proposal also included a provision giving Tenant an allowance for making improvements to the premises and a provision requiring Tenant to pay for five unreserved parking stalls, which, under the original agreement, were provided to Tenant at no extra cost.

¶ 4 After Tenant's receipt of Landlord's initial lease renewal proposal, representatives of both Tenant and Landlord discussed the proposal. Tenant complained of several aspects of the proposal, including the proposed requirement that Tenant pay for parking, as well as Landlord's proposal "to introduce annualized increases in the rents." Tenant then sent a letter to Landlord stating: "This will re-confirm tenant's exercise of its option to renew and extend the terms of the ... Lease for a term of three years. The 'Market rate' should be at $17.00 per square foot."

¶ 5 On March 16, Landlord sent Tenant a letter "Re: Written Notice of the New Rental." Landlord's letter acknowledged that other lease terms, including those regarding parking, must remain the "[s]ame as per [the original] Lease." Landlord again, however, set the "Minimum Annual Rent" at the annually escalating rates proposed in its first response to Tenant's exercise of the option to extend, namely, $17.50 per square foot the first year, $18.00 per square foot the second year, and $18.50 per square foot the third year.

¶ 6 Landlord's letter also contained an exhibit outlining Landlord's calculation of the "Minimum Annual Rent." The exhibit referenced the then-current annual rental rate, $17.00 per square foot, for space in the building where Tenant was then leasing space from Landlord. The exhibit also referred to three other then-current rental rates for similar lease terms in similarly sized premises in other downtown Salt Lake City locations. The annual rental rates in the three other buildings were $19.50 per square foot, $17.50 per square foot, and $17.00 per square foot. Landlord assigned weights to each figure—a 50% weight to the rental rate in Landlord's own building and a 16.67% weight to each of the rental rates in the other buildings—to reach an "average rental rate" of $17.50 per square foot. Landlord also noted: "In addition to the beginning rental rate, an annual rent escalation of $.50 per square foot or 3% has been achieved in 22 of the 24 leases consummated at [Landlord's building] over the past 3 years. The only exceptions have been one year term leases."

¶ 7 By letter dated March 25, 1998, Tenant complained of the terms set forth in Landlord's March 16 letter. Specifically, Tenant asserted that "the term 'Market Rate' [as used in the Option to Extend] does NOT include an annual increase for each of the years number 2 and 3 of the exercised option to extend. Whatever the 'Market Rate' is at the time of the exercise of the option to extend, the said rate shall apply for each of the remaining years." Tenant "reiterate[d the] exercise[ of] its option to extend, and [said] that effective as of July 1, 1998, and continuously monthly thereafter Tenant shall pay as and for basic rents the sum of $17.00 per square foot for the following 36 months."

¶ 8 In "an effort to respond to [Tenant's] prior objection to an escalating rate," Landlord next proposed a flat annual rental rate of $18.00 per square foot over the three-year lease extension, stating that the "$18.00 rate is the average of the rates of $17.50, $18.00 and $18.50 for the first, second and third years, respectively, of the extended lease term set forth in [Landlord's] prior notices." When Tenant rejected the flat $18.00 per square foot rate as well, Landlord wrote Tenant's counsel on April 27, 1998:

> If your client fails to vacate the premises by June 30, 1998, which is the end of the lease term, [Landlord] will immediately commence summary eviction proceedings against your client. In connection with such proceedings, [Landlord] will seek treble damages, as it is entitled to do under the Utah forcible entry and detainer statute.

¶ 9 Tenant remained in possession of the premises after the expiration of the original lease term,[1] and on July 9, 1998, Landlord sent Tenant a three-day notice to quit. Tenant was still in possession on July 15, and Landlord filed a complaint in district court alleging unlawful detainer. Five days later, Landlord obtained, on ex parte motion, an Order Shortening Time to Answer Complaint, which gave Tenant seven days to respond to the summons and complaint. On July 27, 1998, Landlord served the complaint, the Order Shortening Time to Answer Complaint, and a summons on Tenant.[2]

---

1. Beginning July 1, 1998, and until the trial court ordered Tenant's eviction, Tenant made monthly rent payments based on an annual rental rate of $17.00 per square foot. Landlord returned each of those payments to Tenant.

2. Landlord first served the complaint, the Order Shortening Time to Answer Complaint, and a summons on Tenant on July 21, 1998. Tenant claimed the July 21 summons was defective because it gave an incorrect address for the Third District Court, and filed a motion to quash the July 21 summons. Landlord acknowledged the incorrect address in the July 21 summons and, on July 27, 1998, served on Tenant a new summons with the correct address, the complaint, and the Order Shortening Time to Answer Complaint. It is the July 27 summons that is at issue in this appeal.

¶ 10 The summons "required [Tenant] to file an Answer ... within seven (7) days after service of the Complaint upon [Tenant]." The summons did not, however, contain the judge's signature, nor any other mark by the trial court. Rather, the statement in the summons shortening the time to answer the complaint was wholly type-written, and the summons was dated and signed only by Landlord's attorney.

¶ 11 In August, Tenant filed a motion to quash the summons on the ground that the trial court did not "indorse on the summons the number of days within which the defendant [was] required to appear and defend the action," as required by Utah's unlawful detainer statute. Utah Code Ann. § 78–36–8 (1996). Late in October, the trial court summarily denied Tenant's motion to quash the summons.

¶ 12 Tenant then appeared specially to file an answer, counterclaim, and third-party complaint joining Wallace & Associates and Collin Perkins as parties. Wallace & Associates was Landlord's agent in its transactions with Tenant, and Perkins was an employee of Wallace & Associates.

¶ 13 Landlord had previously filed a motion for partial summary judgment seeking Tenant's eviction.[3] On November 13, 1998, the trial court granted Landlord's motion for partial summary judgment, ordering the eviction of Tenant. Tenant vacated the premises early the following month.

¶ 14 Also in December, Landlord filed a motion for partial summary judgment regarding damages. On March 26, 1999, the trial court granted Landlord's motion for partial summary judgment regarding damages, and trebled the amount of damages to $108,417.24. The court also awarded Landlord $33,823.50 in attorney fees and costs.

¶ 15 On November 2, 1999, the trial court entered an order clarifying that its earlier rulings on summary judgment had also disposed of Tenant's counterclaims and third-party complaint. The following June, the

trial court issued an Order for Entry of Final Judgment Pursuant to Stipulation. Tenant then appealed.

## ISSUES AND STANDARDS OF REVIEW

█ ¶ 16 Tenant raises several issues on appeal. We first address Tenant's argument that the trial court erred in denying Tenant's motion to quash the summons served upon Tenant by Landlord because the summons did not comply with Utah Code Ann. § 78–36–8 (1996) in that the summons contained no indorsement by the trial court of the number of days within which Tenant had to appear and defend the action. "[W]hether service of process was proper is a jurisdictional issue, ... [and] the standard of review is a correction-of-error standard[.]" *Bonneville Billing v. Whatley*, 949 P.2d 768, 771 (Utah Ct.App.1997) (internal citation and quotation omitted).

¶ 17 Our resolution of this first issue makes our consideration of the other issues raised by Tenant technically unnecessary. However, because we anticipate that other issues raised by Tenant are likely to again become material, in the interest of judicial economy we address whether Landlord's responses to Tenant's exercise of the Option to Extend complied with the terms of the lease agreement. This we are able to do as a matter of law. *See Trolley Square Assocs. v. Nielson*, 886 P.2d 61, 68 (Utah Ct.App.1994) ("Whether a trial court properly interpreted an unambiguous contract is a question of law, reviewed for correctness, with no deference granted to the trial court.").

## I. COURT INDORSEMENT ON SUMMONS

██ · ¶ 18 We first address Tenant's contention that the summons served on Tenant by Landlord was statutorily deficient. Regarding the summons in an unlawful detainer action, the Utah Code mandates: "The court

3. This case has a long procedural history. There have been any number of motions and pleadings filed by both parties during the course of the proceedings below, as well as orders issued by the trial court, that we do not mention because they are not relevant to our resolution of this appeal. Of relevance, however, is that at all stages, Tenant appeared specially or otherwise maintained its objection to the sufficiency of the summons. *See* Utah R. Civ. P. 12(i) ("The filing of a responsive pleading after the denial of any motion made pursuant to these rules shall not be deemed a waiver of such motion.").

*shall indorse* on the summons the number of days within which the defendant is required to appear and defend the action[.]" Utah Code Ann. § 78–36–8 (1996) (emphasis added). "The unlawful detainer statute is a summary proceeding and in derogation of the common law. It provides a severe remedy, and [the Utah Supreme Court] has previously held that it must be strictly complied with before the cause of action may be maintained." *Sovereen v. Meadows*, 595 P.2d 852, 853–54 (Utah 1979) (holding that where notice "did not give lessee the alternative of paying the delinquent rent or surrendering the premises" the notice was "insufficient 'to place [the lessee] in unlawful detainer' " (citation omitted)). Indeed, the rule requiring strict compliance with the unlawful detainer statute is well-established, although the majority of cases applying it have done so in the context of a defective presuit notice rather than in the context of a defective summons. *See id.* at 853; *Pingree v. Continental Group of Utah, Inc.*, 558 P.2d 1317, 1322 (Utah 1976); *American Holding Co. v. Hanson*, 23 Utah 2d 432, 464 P.2d 592, 593 (Utah 1970); *Cache County v. Beus*, 1999 UT App 134, ¶¶ 9–15, 978 P.2d 1043.

¶ 19 The Utah Supreme Court has on one occasion addressed the failure to comply with section 78–36–8's requirement of court indorsement on the summons. In *Gerard v. Young*, 20 Utah 2d 30, 432 P.2d 343 (1967), the Supreme Court rejected the award of treble damages under the unlawful detainer

statute because, *inter alia*, "[t]he record [did] not show that the statute was followed." *Id.* at 348 (Ellett, J., concurring, but writing for the majority on this point).[4]

¶ 20 This court, in *Fowler v. Seiter*, 838 P.2d 675 (Utah Ct.App.1992), also addressed a case where the plaintiff failed to obtain a court indorsement upon the summons in an unlawful detainer action. *See id.* at 677. The defendant in *Fowler* did not object to the defective summons until after trial and a verdict finding the defendant guilty of unlawful detainer. *See id.* We held that "when a defendant does not appear timely to quash service, the lack of such indorsement is not fatal."[5] *Id.* at 678. Significantly, our analysis and holding in *Fowler* presuppose that if a motion to quash service is timely made, the lack of court indorsement on the summons is "fatal": "Because section 78–36–8 prescribes that the summons in a forcible entry cause of action contain an indorsement by the court, *failure to comply with that requirement by necessity gives rise to an insufficiency of process defense.*" *Id.* (emphasis added).

¶ 21 In accord with the Supreme Court's several decisions reiterating the requirement of strict compliance with the unlawful detainer statute, including *Gerard*, and in light of this court's opinion in *Fowler*, we reaffirm that the mandates of the unlawful detainer statute must be strictly complied with, including the provision that "[t]he court shall

---

4. We ultimately conclude in this case that Tenant's timely motion to quash a defective summons was well-taken and precludes the trial court from exercising personal jurisdiction over Tenant. In *Gerard v. Young*, the Supreme Court concluded that the summons was not properly indorsed and yet allowed partial consideration of the plaintiff's complaint. *See* 432 P.2d at 348. We gather that in *Gerard v. Young*, the defendant did not make a timely motion to quash the unindorsed summons, and that it was only in that context that the Supreme Court said: "The record does not show that the statute was followed in this regard, and, if not, then the plaintiff is in court on a suit to cancel the lease and get actual damages only and not to have the same trebled." *Id.* This interpretation of *Gerard* seems to put that case at odds with *Fowler v. Seiter*, 838 P.2d 675 (Utah Ct.App.1992), but not in a way that materially affects this case. *See* note 5.

5. As we observed in note 4, there appears to be a conflict in the case law regarding what a plaintiff may recover when a defendant waives a court's

lack of personal jurisdiction in an unlawful detainer action. We read *Gerard v. Young* as indicating that the summons was defective because it lacked court indorsement, and that when the defendant waived the defect in personal jurisdiction by appearing and defending, the unlawful detainer action was converted to a "suit to cancel the lease and get actual damages only and not to have the same trebled." 432 P.2d at 348. On the other hand, we held in *Fowler v. Seiter* that if a defendant does not timely raise an insufficiency of process defense, the action remains one for unlawful detainer and the plaintiff is entitled to full treble damages if the defendant is found guilty of unlawful detainer. *See* 838 P.2d at 678–79.

Although we note this apparent conflict in the case law, because Tenant in this case, unlike defendants in the other two cases, timely moved to quash the defective summons, we need not attempt to resolve the conflict here.

indorse on the summons the number of days within which the defendant is required to appear and defend the action." Utah Code Ann. § 78–36–8 (1996).

¶ 22 We briefly clarify, in practical terms, what is required by the indorsement mandate of section 78–36–8. The relevant statutory language is: "The court shall indorse upon the summons the number of days within which the defendant is required to appear and defend the action." Utah Code Ann. § 78–36–8 (1996). "As applied to documents, [indorsement usually] means the signature thereon of a person to whose order the document runs." *Black's Law Dictionary* 533 (abridged 6th ed.1991). We conclude that the indorsement mandate of section 78–36–8 requires a writing on the summons in the judge's own hand of "the number of days within which the defendant is required to appear and defend the action." In connection therewith, the judge should make evident, by signature or the equivalent, that the indorsement of the number of days for the defendant's response was made by the judge, not counsel.[6]

¶ 23 In this case, the trial court did not indorse on the summons the number of days within which Tenant had to appear and defend the action. Rather, the statement in the summons shortening the time to answer the complaint was wholly type-written, and the summons was dated and signed only by Landlord's attorney. Thus, the summons did not comply with the indorsement requirement of section 78–36–8. Furthermore, Tenant made a timely motion to quash the summons on the ground that it was not properly indorsed. We therefore conclude that the trial court erred by not granting Tenant's motion to quash the summons. *Cf. Fowler,* 838 P.2d at 678.

¶ 24 Landlord readily acknowledges that the "time period [for Tenant's response] was not written on the summons by the court nor was the summons signed by the court." Landlord argues, however, that because it served upon Tenant, together with the unindorsed summons, the Order Shortening Time to Answer Complaint, which was signed by the court, "[Tenant] cannot be heard to complain that it received improper notice or was otherwise prejudiced." We cannot agree. The Order Shortening Time to Answer Complaint, like the summons, did not have *indorsed upon it by the trial judge* the number of days within which Tenant had to answer the complaint, even though it was signed and dated by the judge. Simply stated, an order shortening time to answer complaint that lacks a court's indorsement of the number of days Tenant has to respond is not an adequate substitute for a similarly defective summons. And given the strict compliance standard, it is likely that any such indorsement on an order rather than the summons itself would not satisfy the statute anyway.

¶ 25 Because the summons was defective, we remand to the trial court for the limited purpose of quashing Landlord's July 27, 1998 summons. Without an effective summons, the district court did not acquire personal jurisdiction over Tenant.[7] *See Utah Sand &*

---

6. Strict adherence to this requirement may seem somewhat silly, especially in a case where the trial court signed a separate order shortening the answer time. It is not the prerogative of courts, however, to ignore legislative mandates. This is especially true in the current context, involving, as it does, both a summons and an extraordinary remedy. The summons "is the foundation of a lawsuit" and "is the means of invoking the jurisdiction of the court and of acquiring jurisdiction over the defendant." *Utah Sand & Gravel Prods. Corp. v. Tolbert,* 16 Utah 2d 407, 402 P.2d 703, 704 (1965). Also, as already noted, "[t]he unlawful detainer statute is a summary proceeding in derogation of the common law," and it "provides a severe remedy." *Sovereen,* 595 P.2d at 853. Picky though it may seem, the Legislature is free to require that a summons initiating an unlawful detainer action evidence on its face that the court itself determined and authorized the shortened time for the defendant's response.

7. There is an important distinction between failure to strictly comply with the presuit notice requirements of the unlawful detainer statute and failure to strictly comply with the statutory requirement of court indorsement of the summons in an unlawful detainer action. A flawed notice only "results in a failure to state a claim" for unlawful detainer. *Sovereen,* 595 P.2d at 854 n. 3. Thus, in *Pingree v. Continental Group of Utah, Inc.,* 558 P.2d 1317 (Utah 1976), where the notice was defective, the Utah Supreme Court did not dismiss the case for lack of jurisdiction, but rather converted what would otherwise have been an unlawful detainer action into an action for common law ejectment. *See id.* at 1322. *See also Cache County v. Beus,* 1999 UT App 134, ¶ 21, 978 P.2d 1043 ("[A] landlord may maintain a common law ejectment action in Utah to remove a tenant from the premises even if he has

*Gravel Prods. Corp. v. Tolbert,* 16 Utah 2d 407, 402 P.2d 703, 704 (1965). It follows that each of the trial court's rulings fail for lack of personal jurisdiction over defendant and must be vacated.

## II. COMMENT ON MERITS

¶ 26 "Although resolution of the above issue is dispositive of the present case, where an appellate court finds that it is necessary to remand for further proceedings, it has the duty of 'pass[ing] on matters which may then become material.'" *Bair v. Axiom Design, L.L.C.,* 2001 UT 20, ¶ 22, 20 P.3d 388 (alteration in original) (quoting *LeGrand Johnson Corp. v. Peterson,* 18 Utah 2d 260, 420 P.2d 615, 617 (1966)). *See* Utah R.App. P. 30(a). Although we do not literally remand for a new trial, we nonetheless anticipate the possibility of further litigation regarding this dispute [8] and, in the interest of judicial economy, address an issue that may yet become material.

¶ 27 The key issue we address is whether, after Tenant exercised its Option to Extend, Landlord responded with a new rental rate that accorded with the terms of the lease agreement. There is no dispute as to the relevant facts, and so we need only apply the facts to the plain meaning of the lease. *See Larson v. Overland Thrift & Loan,* 818 P.2d 1316, 1319 (Utah Ct.App. 1991) ("If the terms of an agreement are clear and unambiguous, we interpret them according to their plain and ordinary meaning[.]"), *cert. denied,* 832 P.2d 476 (Utah 1992).

¶ 28 Tenant exercised its Option to Extend prior to the lease agreement's March 1, 1998 deadline. The lease agreement provided, with our emphasis, that upon Tenant's exer-

cise of the Option to Extend, the lease term would be extended "for an additional period of three (3) years ..., upon the same terms and conditions except Basic Rent shall be adjusted to the *then* prevailing market rates." The lease gave Landlord the right to determine the then prevailing rental rate, within certain restrictions:

> Landlord must provide Tenant with written notice of the new rental. "Market rate", as used by Landlord to determine the new Basic Rent, shall be the rental rate for comparable space of comparable size for a similar term for a similar creditworthy tenant by reference first to the Building and second to the other similar buildings in downtown Salt Lake City.

The lease also stated that after receiving notification of Landlord's proposed new rental rate,

> Tenant may reject the new rental rate for a period of 30 days following notice from the Landlord, at which time Tenant's exercise of its Option to Extend shall be null and void. If Tenant does not notify Landlord within 30 days of Landlord's notice to Tenant of the new rental rate, the Tenant shall automatically be deemed to have accepted the market rental rate in the notice.

¶ 29 Landlord's initial responses to Tenant's proper exercise of the Option to Extend called for annually escalating rental rates over the three-year extension term. Tenant contends that those "annual escalations in rent for each year of the three-year extension term[ were] in violation of the express terms of the Option to Extend, which provided for the 'new Basic Rent' to be locked in" at the "Market rate" for the entire period of

---

failed to follow the [notice] requirements of the Unlawful Detainer Statute.").

A defective summons produces a different result. "The proper issuance and service of a summons[,] which is the means of invoking the jurisdiction of the court *and of acquiring jurisdiction over the defendant,* is the foundation of a lawsuit." *Tolbert,* 402 P.2d at 704 (emphasis added). Thus, a defective summons prevents a court's exercise of personal jurisdiction over the defendant. Lacking personal jurisdiction over the defendant, the trial court may not, then, simply convert a plaintiff's unlawful detainer action into a common law action for ejectment.

As we have seen in *Fowler v. Seiter,* 838 P.2d 675 (Utah Ct.App.1992), however, a defendant may, by appearing and defending, waive a court's lack of personal jurisdiction over the defendant. *See id.* at 678.

8. *See* Utah Code Ann. § 78–12–23 (1996) (six year limitations period for actions founded on written agreement); *id.* § 78–12–40 (even if limitations period has otherwise expired, plaintiff whose action fails "otherwise than upon the merits" has one year in which to "commence a new action").

the extension. Tenant's argument is well-taken.

¶ 30 There is no suggestion in the lease agreement that, upon Tenant's exercise of its Option to Extend, Landlord could demand escalations in the rental rate over the period of the extension term. Rather, the lease agreement speaks of Landlord setting a single "new rental," "new Basic Rent," or "new rental rate." Tenant clearly had the right to an option to extend the lease term for three years at a set rental rate to be appropriately determined by Landlord. The attachments to Landlord's second response to Tenant's exercise of the Option to Extend evidenced a reasonable approach in Landlord's determination that "the [then prevailing] rental rate for comparable space of comparable size for a similar term for a similar credit-worthy tenant by reference first to the Building and second to the other similar buildings in downtown Salt Lake City" was $17.50 per square foot per year. At the same time, Landlord's additional demand for annual escalations beyond $17.50 per square foot after the first year of the extension was clearly contrary to the plain terms of the lease.[9]

¶ 31 When Tenant complained of Landlord's proposal for annually escalating rental rates, Landlord submitted another proposal to Tenant in "an effort to respond to [Tenant's] prior objection to an escalating rate." Landlord offered a flat annual rental rate of $18.00 per square foot over the three-year lease extension, explaining that the "$18.00 rate is the average of the rates of $17.50, $18.00 and $18.50 for the first, second and third years, respectively, of the extended lease term set forth in [Landlord's] prior notices." Under these circumstances, Landlord's acknowledgment that the prevailing market rental rate at the time of Tenant's exercise of the Option to Extend was $17.50 per square foot forecloses its ultimate assertion that $18.00 per square foot was the then prevailing market rate.

¶ 32 The Option to Extend required Landlord to respond to Tenant's proper exercise of the option by proposing in good faith a new rental rate for the extension term that reflected the *then* prevailing market rate. Tenant could then either accept or reject that proposed new rental rate. A rejection of Landlord's proper proposal would void Tenant's exercise of the Option to Extend.

¶ 33 Tenant properly exercised its Option to Extend, yet, as set forth above, Landlord never proposed a new rental rate in accordance with the terms of the Option to Extend. Because Tenant properly exercised its Option to Extend, Landlord breached the lease agreement by never offering Tenant a new rental rate that complied with the terms of the agreement.

## CONCLUSION

¶ 34 We conclude that the summons served upon Tenant was statutorily deficient and, given Tenant's timely assertion of that defense, did not confer personal jurisdiction over Tenant. The trial court erred in not quashing the summons and did not have personal jurisdiction to hear the claims against Tenant. We therefore vacate each of the orders issued below and remand for the trial court to enter an order quashing the summons. Anticipating the possibility of further litigation arising from this dispute, we rule that Landlord breached the lease by failing to provide Tenant with a new basic rent for the extension term that accorded with the terms of the lease.

9. It seems likely that the basis for Landlord's proposal for annually escalating rental rates over the three-year extension term stems from its notation in its March 16, 1998 "Proposal for a New Rental" that "[i]n addition to the beginning rental rate, an annual rent escalation of $.50 per square foot or 3% has been achieved in 22 of the 24 leases consummated at [Landlord's building] over the past 3 years[;][t]he only exceptions have been one year term leases," together with the language in the lease providing that Landlord would determine the market rate by looking to, *inter alia,* "the rental rate ... for a similar term ... by reference first to [Landlord's] Building." We are convinced, however, that because the language in the Option to Extend speaks exclusively in terms of a singular "rental rate" or "Basic Rent," and because the market rate was to be determined by reference to "other similar buildings in downtown Salt Lake City" and not to Landlord's building alone, the Option to Extend plainly did not contemplate annually escalating rental rates over the extension term.

¶ 35 WE CONCUR: NORMAN H.
JACKSON,, Associate Presiding Judge, and
JAMES Z. DAVIS, Judge.