Carl L. PINGREE et al., Plaintiffs, Respondents, and Cross-Appellants,

v.

The CONTINENTAL GROUP OF UTAH, INC., a Utah Corporation, and Leslie W. Van Antwerp, Jr., aka L. A. Antwerp dba Van's Blue Ox, Defendants and Appellants.

No. 14484.

Supreme Court of Utah.

Dec. 22, 1976.

---

1. See *Miller v. Miller,* 8 Utah 2d 290, 333 P.2d 945.

2. *State in Interest of K___ B___,* 7 Utah 2d 398, 326 P.2d 395.

Brian R. Florence, of Florence & Hutchison, Ogden, for defendants and appellants.

Edward P. Powell, of Christensen, Gardiner, Jensen & Evans, Salt Lake City, for respondents.

MAUGHAN, Justice:

On appeal is a judgment of the District Court in an action for a Declaratory Judgment involving a lease, together with a cross-appeal seeking treble damages for unlawful detainer.

We affirm, in part, reverse, in part; and remand for elimination from the judgment all sums included because of failure to construct the fire escape. No costs awarded. Statutory references are to U.C.A.1953.

Plaintiffs, lessors of premises suitable for use as a restaurant initially leased to The Continental Group of Utah, Inc., hereafter Continental. Continental's interest was assigned, with the lessor's consent, to Leslie Van Antwerp, Jr., hereafter, defendant or lessee. In their complaint, plaintiffs sought an order declaring a provision granting lessee an option to renew, invalid for uncertainty. In the alternative, a decree declaring the rental under the renewal option to be $900 per month, and a determination as to the one responsible under the lease for the installation of a fire escape.

Upon trial to the court, plaintiffs were awarded judgment as follows: $4,000 damages for breach of the covenant to repair and maintain the premises and for lessee's failure to install a fire escape; $400 per month additional rent commencing October 1, 1974, through February 1975; damages for holdover of the premises from March 4, 1975, to January 15, 1976, in the sum of $9,450, with offset of $5,000 paid during this period ($90 per month reasonable rental value); $5,000 attorney's fees; and a decree terminating the lease and restoring possession.

Lessors and Continental, the initial lessees, executed a lease for a term of five years, commencing October 1, 1969. The lease provided the premises were rented in an "as is" condition. The lessee covenanted, at his sole expense, to maintain the exterior and interior of the building and improvements on the premises, including the roof, plumbing and electrical wiring, air-conditioning, and heating equipment, subject to reasonable wear and tear. Reserved rent was $500 per month, plus three percent of the gross receipts, in excess of $10,000. Beginning in 1970, Continental utilized the second floor of the premises for banquets and parties. In January 1972, the Fire Department of Roy City informed Continental this new use of the premises required the installation of a fire escape.

In May 1972, Continental, with lessor's consent, assigned its leasehold interest to defendant. A representative of Continental testified defendant was informed it was his responsibility to install the fire escape, and to repair the floor. The trial court found defendant assumed all the rights and obligations under the lease, and defendant understood, at the time of the assignment, the lease required him to do all maintenance; including changes made necessary by the public authorities. Further, defendant assumed the obligation to repair and maintain any condition which occurred during the occupancy of Continental.

By a letter of September 24, 1974, lessors informed defendant of specific deficiencies in his maintenance, and in their amended complaint, they sought damages for breach of the covenant. The trial court found defendant had failed to make extensive repairs within the covenant. Plaintiffs were awarded damages of $4,000 for defendant's failure to repair and maintain the premises, and to install the fire escape.

On appeal, defendant contends there was insufficient evidence to sustain the finding he was responsible for the damages awarded. However, with the exception of the fire escape, the record does not sustain defendant's contentions.

A representative of defendant's predecessor, Continental, testified the building was in good condition at the time defendant took possession. The records of the Health Department during 1974, indicated the need for repair of the premises. Significantly, defendant did not contradict the testimony of Continental, to wit, he agreed he would be responsible for the repairs and installation of the fire escape.

█ Estimates of the cost of repairs were adduced, and the court was of the view, if the repairs were made, betterment would

be the result. There is no evidence in the record to show the cost of the fire escape, which was not included in the estimate of repair of structural damage. The total estimate for repairs without the fire escape was $4,564. The trial court did not allocate the $4,000 for delayed maintenance and the fire escape among the various cited deficiencies. However, since there is evidence in the record to sustain the amount of the award, (excepting the fire escape), the finding of the trial court is sustained.

It was found the City of Roy directed the fire escape be installed, because of the use being made of the premises by the lessee; and defendant understood at the time of the assignment, it was his duty to do all maintenance; including changes made necessary by public authorities. Defendant testified he used the upstairs for banquets and parties, which accounted for 10 to 20 percent of his business.

*Gaddis v. Consolidated Freightways,*[1] illuminates the several factors to be considered in determining who should bear the cost of compliance required by governmental authority, in order to conform the premises to health and safety laws.

■ The court quoted the following from 1 American Law of Property 353:

Where the lessee covenants to repair, the question of who should bear the cost of compliance depends upon the nature of the alteration or improvement and the reason for requiring it. If the order involves mere repairs which the lessee would normally be required to make under his covenant, he should bear the cost. Likewise, the burden is on the lessee where the alteration is required only because of the particular use which he is making of the premises, although it may be questioned whether even in this case, the court would place the burden of extensive and lasting improvements on the lessee, except perhaps where the lease is

for a long term. At any rate, if the order requires the making of such improvements, so-called "structural" changes, and they are not required because of the particular use made of the premises by the lessee, the lessor must bear the burden of compliance.

■ In our matter, defendant had the responsibility to install the fire escape, had he continued to engage in activities which required it. Defendant's particular use of the premises was the reason the authorities required the installation.[2] He was notified no business license would be issued were he to continue the prohibited use. Faced with this ultimatum defendant chose to stop the proscribed activities, thus rendering the fire escape responsibility moot.

Defendant asserts error in the court's determination that, under the option to renew, $900 per month was a reasonable rental rate. The lease contained the following renewal provisions, which were drafted by defendant's predecessor Continental:

The Lessee shall have and is hereby granted the option to renew this lease for two separate additional five-year terms, commencing on the first month following the expiration of the term of this lease upon the same terms and conditions contained herein except that the rental amount will be renegotiated; however, maximum total monthly rental shall not exceed $900.00 per month.

Factors of tax increase, costs of business increases or decreases, business volume and success, insurance costs and other reasonable allowances, will be the basis for terms of negotiation.

Defendant gave lessors timely notice of his exercise of the option to renew. Lessors responded the new rental would be $900 per month. Defendant replied citing the factors of the lease and explaining his costs of doing business had increased 81 per cent, and his volume had decreased 24 per cent.

1. 239 Or. 553, 398 P.2d 749, 22 A.L.R.3d 514 (1965).

2. See 22 A.L.R.3d 521, 539, Sec. 8: "Where the tenant covenants to repair and the alterations or improvements ordered by public authority are ordered because of the particular use the tenant makes of the premises, the tenant, and not the landlord, has been held obligated."

Defendant was willing to pay $500 per month. Lessors based their demand on the increase in taxes and insurance, interpreting the provision "and other reasonable allowances," as meaning they were entitled to a fair return on their investment in the premises. Evidence set the value of the premises to be between $150,000 and $200,000.

The parties were unable to agree on the rental rate for the renewal period—resulting in this action. Defendant urges, if the factors set forth in the option were compared to his evidence, it clearly illustrates error in setting the rent at $900 per month. Plaintiffs cross-appeal, asserting the trial court erred by not ruling the option for renewal void and unenforceable, on the ground it was too indefinite and vague.

■ Plaintiffs' contention is correct. If the factors are considered in view of the defendant's evidence, a low rental is justified. If the factors are weighed in light of plaintiff's evidence, the maximum rental would be appropriate. From the factors specified, a court cannot derive an objective standard applicable to both parties; i. e., there is a material difference in the final result (the renewal rate), when the factors are analyzed in relationship to the position of each party.

A condition precedent to the enforcement of any contract is that there be a meeting of the minds of the parties, which must be spelled out, either expressly or impliedly, with sufficient definiteness to be enforced. . . .[3]

Cited are the various rules of interpretation to support their positions. In *Slayter v. Pasley*,[4] the court in a scholarly opinion set forth majority and minority rulings.

The majority rule, in essence, is that a provision for the extension or renewal of a lease must specify the time the lease is to extend and the rate of rent to be paid with such a degree of certainty and definiteness that nothing is left to future determination. If it falls short of this

requirement, it is not enforceable. . . .

The court then explained the minority rule has two divisions. In the first, the provision is held enforceable if it clearly establishes a mode for ascertaining the future rental rate, as by arbitration, or if there is an express declaration for a reasonable rental during the extension period, or other words or phrases; which clearly connote and are legally synonymous with reasonable rental. Under the second division of the minority rule, the court implies a mutual agreement for a reasonable rental.

■ In the current matter, the court implied the parties had agreed on a reasonable rental figure, which the court proceeded to determine. This interpretation had the effect of nullifying the express factors specified by the parties, and substituting a new agreement to which the parties had not committed themselves.

To attempt by judicial fiat to substitute the legal concept of "reasonable rental" in lieu of the previously followed design of a fluctuating rental, measured by future uncontrolled and uncontrollable conditions, would, indeed, be to remake the contract for the parties and very possibly frustrate what to us appears to be a very important contrary intent concerning the rental amount. . . .[5]

The option to renew was too vague and indefinite to be enforceable and the lease terminated by its own terms as of September 30, 1974. Under Section 28 of the lease, if the lessee holds possession after expiration of the term, he becomes a tenant on a month-to-month basis in an amount equal to the prior monthly payment. The court erred in ordering defendant to pay an additional $400 per month rent from October 1, 1974, to March 5, 1975.

Plaintiffs' cross-appeal urging error in not being awarded treble damages for defendant's unlawful detainer under 78–36–

**3.** *Valcarce v. Bitters,* 12 Utah 2d 61, 63, 362 P.2d 427 (1961).

**4.** 199 Or. 616, 264 P.2d 444, 446 (1953).

**5.** Id. p. 451 of 264 P.2d.

10. Defendant asserts this ruling of the trial court should be sustained.

Plaintiffs initially sent a letter to defendant on September 24, 1974, setting forth deficiencies in the maintenance of the premises. Plaintiffs stated, if the deficiencies were not corrected within thirty days, "you are hereby notified of lessors intent to forfeit, cancel and terminate this lease. . . ."

Later, there were several meetings between the parties and the repairs were discussed. On February 26, 1975, plaintiffs served notice on defendant, which stated they "hereby declare a forfeiture" of the lease for the lessee's failure to correct the deficiencies set forth in the letter of September 24, 1974. The lessors informed lessee he was a tenant at will, and ordered him to vacate the premises within five days. Lessee was informed if he failed to vacate, an unlawful detainer proceeding would be commenced and he would be liable for treble damages.

On March 17, 1975, defendant was served with summons and complaint, for the declaratory judgment action. The summons was not in accordance with the mandatory provisions of 78–36–8, and the complaint did not include any claim of forfeiture or unlawful detainer. It was not until July 21, 1975, plaintiffs filed an amended complaint, alleging unlawful detainer.

 In *Gerard v. Young,*[6] this court held that a plaintiff, to bring his case under the Forcible Entry and Detainer statute, must comply with the provisions of 78–36–8. For plaintiffs failure to comply with this statute, the trial court properly ruled they were not entitled to treble damages. In addition, plaintiffs' declaration of forfeiture was not conditional as required by 78–36–3(5). This court has consistently ruled a notice of forfeiture is sufficient to terminate a lease for breach of a covenant, but it

is not sufficient to place the lessee in unlawful detainer. This for the reason the statute requires an alternative notice, viz., the tenant either perform, or quit; before he can be held in unlawful detainer, and be subject to treble damages.[7]

The court was correct in its ruling that defendant's refusal to vacate was wrongful, after the service of the notice of forfeiture and to vacate on February 26, 1975. The amended complaint filed by plaintiffs in July was a common law action for ejectment. The court properly awarded plaintiffs possession of the property, and damages for the time defendant remained in possession. Damages recoverable under such circumstances are generally the reasonable rental value of the premises.[8] The reasonable rental value was found to be $900 per month; such sum is sustained by the evidence.

HENRIOD, C. J., and ELLETT, CROCKETT and WILKINS, JJ., concur.

---

**6.** 20 Utah 2d 30, 432 P.2d 343 (1967).

**7.** *Jacobson v. Swan,* 3 Utah 2d 59, 68, 278 P.2d 294 (1954); *Erisman v. Overman,* 11 Utah 2d 258, 358 P.2d 85 (1961); *Van Zyverden v. Farrar,* 15 Utah 2d 367, 393 P.2d 468 (1964); *Fire-*

man's Insurance Co. v. Brown v. Fullmer, 529 P.2d 419 (Utah 1974).

**8.** 32 A.L.R.2d 582, Anno: Measure of damages for tenant's failure to surrender possession of rented premises, Sec. 4, p. 589.