**HOUSING AUTHORITY OF SALT LAKE CITY, Plaintiff and Appellant,**

v.

**Louise Lopez DELGADO, Defendant and Appellee.**

No. 950300–CA.

Court of Appeals of Utah.

April 4, 1996.

L. Zane Gill, Kimberly D. Washburn, Law Office of L. Zane Gill, P.C., Salt Lake City, for Appellant.

Eric Mittelstadt, Annette T. Jan, Bruce Plenk, Salt Lake City, for Appellee.

Before BILLINGS, JACKSON and WILKINS, JJ.

JACKSON, Judge:

Housing Authority of Salt Lake City (Housing Authority) challenges the trial court's decision for tenant Louise Lopez Delgado in an unlawful detainer action. We affirm.

### FACTS

Delgado leased federally subsidized housing from Housing Authority. Her monthly rent payment was $37 to which she had agreed to add $20.96 per month until she paid off $251.53 in back rent, late fees, and maintenance and damage charges. Her total payment of $57.96 was due on or before the first day of each month. The lease stated that "[n]on-payment of rent by the fifth day of the month will result in commencement of eviction proceedings."

The circumstances of Delgado's rent payment for February 1995 spawned this litigation. Delgado testified at trial that she had purchased a money order for $57 from a grocery store with which to pay her February rent. She further testified she properly deposited the money order in Housing Authority's drop box on February 4. Housing Authority's case worker testified Housing Authority never received the money order and, on February 10, served Delgado with a combined three-day notice to pay rent or quit under the state unlawful detainer statute, Utah Code Ann. §§ 78-36-3 to -10 (1992 & Supp.1995), and fourteen-day notice of lease termination under federal law, 24 C.F.R. § 966.4($l$)(3) (1995).

In response, Delgado or her daughter notified Housing Authority that Delgado had deposited a money order for $57 in the drop box and showed the money order receipt to the case worker. Around February 17, Housing Authority sent Delgado a letter stating she should either initiate a trace on the money order or stop payment on it. The letter additionally stated Housing Authority would delay further legal action until Delgado could complete the trace. Delgado did not initiate the trace or contact Housing Authority until about two weeks later. On March 3, having not heard from Delgado, Housing Authority filed a complaint against Delgado for unlawful detainer. The trace eventually revealed the money order was never negotiated, and the grocery store later reimbursed Delgado in full. Delgado testified she remained willing to make her February rent payment, and she had attempted to tender her March rent but was refused.

At trial, the court found Delgado acted in good faith, "substantially in compliance with the lease, [and] that she did everything that she could reasonably be expected to understand in an attempt to do what she was supposed to." On appeal, Housing Authority attacks that finding, arguing the doctrine of substantial compliance does not apply to residential leases in Utah and, in any event, Delgado's actions in this case did not sub-

stantially comply with the lease.[1]

## ANALYSIS

### I. Substantial Compliance Doctrine in Utah

■ Whether the substantial compliance doctrine applies to residential leases is a question of law that we review for correctness. *See State v. Pena,* 869 P.2d 932, 936 (Utah 1994) ("[A]ppellate courts have traditionally been seen as having the power and duty to say what the law is and to ensure that it is uniform throughout the jurisdiction."). Our evaluation of Utah law, along with other sources of landlord-tenant law, convinces us that the doctrine does apply in some residential lease situations to defeat a landlord's attempt to forfeit a lease because of a tenant's minor breach.

■ We observe a general policy disfavoring forfeitures. *U–Beva Mines v. Toledo Mining Co.,* 24 Utah 2d 351, 354, 471 P.2d 867, 869 (1970). The substantial compliance doctrine furthers that policy by allowing equity to intervene and rescue a lessee from forfeiture of a lease when the lessee has substantially complied with the lease in good faith. *See id.*

In recent years, the Utah Supreme Court "has conformed the common law in this state to contemporary conditions by rejecting the strict application of traditional property law to residential leases, recognizing that it is often more appropriate to apply contract law." *Wade v. Jobe,* 818 P.2d 1006, 1010 (Utah 1991). Substantial compliance is one of the contract law doctrines that has been imported into lease cases. *See id.* at 1011 (holding in residential lease case that "[s]ubstantial compliance with building and housing code standards will generally serve as evidence of the fulfillment of a landlord's duty to provide habitable premises"); *Hackford v. Snow,* 657 P.2d 1271, 1274 (Utah 1982) (implicitly approving trial court's use of substantial compliance doctrine in farm lease case); *U–Beva Mines,* 471 P.2d at 869 (applying

substantial compliance doctrine in mine lease situation).

Our conclusion that equitable principles may be applied in an appropriate situation—even involving nonpayment of rent—to preclude forfeiture of a lease is further bolstered by the Second Restatement of Property, which does not distinguish between residential and commercial leases in stating: "Equitable considerations in regard to the tenant's failure to meet his rent obligation may justify relieving him from forfeiture of the lease for his failure to pay the rent despite provisions in the lease which would otherwise allow it." Restatement (Second) of Property § 12.1 cmt. n (1976); *see also* Robert S. Schoshinski, American Law of Landlord and Tenant § 6:2, at 392 (1980) ("On well established principles of equity, courts have routinely granted relief from forfeiture in the case of a breach of a covenant to pay rent ... where the tenant stands ready to correct his default."); 49 Am.Jur.2d *Landlord & Tenant* § 342 (1995) (observing equitable relief against forfeiture may be available when regular rent payment is not technically timely because of relatively insignificant act or omission of lessee acting in good faith).

### II. Delgado's Substantial Compliance

■ Whether a breach is so insubstantial as to trigger the application of equitable principles is a question of fact. *Hackford v. Snow,* 657 P.2d 1271, 1274 (Utah 1982). We will not overturn the trial court's factual findings unless they are clearly erroneous. *See* Utah R.Civ.P. 52(a). Factual findings are clearly erroneous only if they are "against the clear weight of the evidence." *Reid v. Mutual of Omaha Ins. Co.,* 776 P.2d 896, 899–900 (Utah 1989). "When, as here, there is conflicting evidence, we give deference to the trial court as the factfinder and we acknowledge its advantageous position vis-a-vis the trial, the parties, and the witnesses." *Dang v. Cox Corp.,* 655 P.2d 658, 660 (Utah 1982).

■ Housing Authority does not contest the trial court's implicit finding that Delgado

---

1. Housing Authority also attacks the trial court's finding that Delgado fully complied with the lease. However, we need not address that argument because our analysis of the substantial compliance issue is dispositive.

timely deposited the money order in the drop box.[2] It instead argues that even if Delgado did deposit the money order on time she still breached the lease because (1) the money order was 96 cents short of the total payment required, and (2) when Housing Authority notified Delgado on February 10 that it had not received the payment and requested that she trace the money order, Delgado did not initiate a trace until around March 2. Housing Authority urges that these grounds alone warrant a ruling of forfeiture. However, we believe the evidence supports the trial court's factual finding that Delgado substantially complied with the lease and its consequent ruling of nonforfeiture.

The trial court's general finding of substantial compliance implies a specific finding that a good faith payment of $57 substantially complies with a required payment of $57.96. Based on the negligible amount involved and Delgado's testimony that the omission of 96 cents was merely an oversight, this implicit finding is not clearly erroneous and, indeed, seems reasonable. No evidence exists to show that Delgado would not have promptly cured the 96-cent mistake upon request.

The general finding of substantial compliance further implies a specific finding that Delgado's delayed initiation of a trace on the money order was not a substantial breach of the lease. Delgado's testimony also supports this finding. She stated she had hoped the money order would surface on its own, and, in the meantime, she consulted attorneys regarding the matter. Once an attorney told her to "go ahead and trace it," she initiated the trace. The trial court apparently regarded Delgado to be a credible witness and believed, based on her testimony, that she had acted in good faith to trace the money order and comply with the lease. Thus, we cannot say this implicit finding is clearly erroneous either.

## CONCLUSION

The trial court correctly determined that the equitable doctrine of substantial compliance applies to residential leases in Utah.

Further, the trial court's finding that Delgado in good faith substantially complied with the lease is supported by adequate evidence and, thus, is not clearly erroneous. Accordingly, we affirm.

BILLINGS and WILKINS, JJ., concur.

2. Housing Authority chose not to further press this issue after conceding at oral argument that the trial court obviously believed Delgado on this point.