1999 UT App 134

CACHE COUNTY, a public politic,
Plaintiff and Appellee,

v.

Leo R. BEUS, Annette Beus, Malcolm C. Young, Alice H. Young, Charles M. Young, John H. Young, William Horsley, and Susan Horsley, ("The Beus Group"), Defendants and Appellants.

No. 981067–CA.

Court of Appeals of Utah.

April 29, 1999.

Lyle W. Hillyard and Brian G. Cannell, Hillyard, Anderson & Olsen, Logan, for Appellants.

Andrew M. Morse, Snow, Christensen & Martineau, Salt Lake City, for Appellee.

Before WILKINS, P.J., BENCH and BILLINGS, JJ.

## OPINION

BILLINGS, Judge:

¶ 1 Leo R. Beus, et al. (Beus) appeals the trial court's grant of summary judgment in favor of appellee Cache County precluding Beus from terminating a lease agreement between itself and Cache County. We reverse and remand.

## FACTS

¶ 2 On or about June 21, 1994, the parties entered into a lease agreement (the Lease) whereby Cache County leased certain real property from Beus. The Lease provided for rental of $500 per month and granted Beus a right to terminate the Lease upon nonpayment of rent ten days after written notice to pay rent. That same day, Cache County commenced occupancy under the Lease.

¶ 3 From June 21, 1994 until December 21, 1994, Cache County made no rent payments. On December 21, 1994, Beus sent Cache County a letter, exercising its right to terminate the Lease. Cache County sent Beus a check to bring the rent current within the ten day cure period, thus avoiding termination.

¶ 4 From December 21, 1994 through April 3, 1995, Cache County again failed to make any rent payments. On April 3, 1995, Beus sent Cache County a letter stating that no payments had been made under the Lease since December 1994, and exercised its right to terminate. Cache County received this letter on or before April 10, 1995, as shown by the Cache County Executive date stamp on the letter. On April 20, 1995, Beus sent Cache County a second letter, reaffirming the termination of the Lease.

¶ 5 On April 21, 1995, Cache County sent Beus a check for the rent due. Beus received the check on April 24, 1995. On April 26, 1995, Beus sent a third letter to Cache County stating that the Lease was terminated, and it was willing to negotiate a new rent, but it preferred Cache County leave the premises. On May 10, 1995, Beus sent Cache County a final letter requesting Cache County vacate.

¶ 6 On June 16, 1995, Cache County filed its Petition for Declaratory Judgment requesting the trial court enter a preliminary injunction to prevent Beus from taking any action to evict Cache County or its sublessee from the premises and to declare the Lease in full force and effect. On October 6, 1995, Beus filed its Answer and Counter-Petition requesting an order from the trial court terminating the Lease pursuant to its terms and seeking damages for unlawful detainer under Utah's Unlawful Detainer Statute. *See* Utah Code Ann. § 78–36–3 (1996).

¶ 7 The parties filed cross motions for summary judgment. The trial court granted Cache County's motion, concluding that Beus failed to provide Cache County with proper notice under the Unlawful Detainer Statute, *see id.* § 78–36–3(1)(c), to place Cache County in unlawful detainer. Further, applying equitable principles, the trial court concluded that Cache County had substantially complied with the terms of the Lease and therefore the Lease would remain in effect. Beus then filed this appeal.

## ANALYSIS

### I. Unlawful Detainer Statute

 ¶ 8 The first issue presented is whether the trial court correctly concluded

Cache County could not be evicted under Utah's Unlawful Detainer Statute because Beus had not given proper notice under the statute. The trial court's interpretation of a statute is a question of law which we review for correctness. *See Ong Int'l (U.S.A.), Inc. v. 11th Ave. Corp.,* 850 P.2d 447, 452 (Utah 1993).

### A. Notice Requirements

¶ 9 Section 78-36-3(1)(c) provides, in pertinent part:

(1) A tenant of real property, for a term less than life, is guilty of an unlawful detainer:

. . . .

(c) when he continues in possession, in person or by subtenant, after default in the payment of any rent and after a notice in writing requiring in the alternative the payment of the rent or the surrender of the detained premises, has remained uncomplied with for a period of three days after service, which notice may be served at any time after the rent becomes due. . . .

Utah Code Ann § 78-36-3(1)(c) (1996).

¶ 10 This provision requires that a tenant be given notice of its opportunity to cure any default in back rent before it is placed in unlawful detainer (commonly referred to as the "remedy or quit" notice requirement). Utah's courts have addressed the application of the statute in several situations.

¶ 11 In *Sovereen v. Meadows,* 595 P.2d 852 (Utah 1979), our supreme court noted:

[The landlord's] notice to quit failed to comply with subsection (3) because it did not state that the tenant had the option of paying the delinquent rent.

The unlawful detainer statute is a summary proceeding and in derogation of the common law. It provides a severe remedy, and this Court has previously held that it must be strictly complied with before the cause of action may be maintained.

*Id.* at 853 (citations omitted).

¶ 12 Further, in *American Holding Co. v. Hanson,* 23 Utah 2d 432, 464 P.2d 592 (Utah 1970), the Utah Supreme Court noted:

The notice of termination and to quit served upon the [tenants] by the [landlord] declared that the [tenants] had failed to make the payments of rent due under the lease and that they had also failed to pay the utility bills. The notice further provided that the [tenants] were to quit the premises and to deliver possession of the same to the plaintiff within 15 days.

It is quite obvious that the notice failed to comply with Section 78-36-3, U.C.A. 1953. . . .

The statute requires that a notice in writing requiring in the alternative the payment of the rent or the surrender of the detained premises shall have remained uncomplied with for a period of three days after the service of the notice. The landlord is not entitled to maintain an action for the restitution of the premises without first having complied with the statute in giving a proper notice which complies with the terms of the statute.

*Id.* at 592-93.

¶ 13 These cases require that landlords *strictly* comply with the terms of the statute before they are entitled to utilize its severe remedies. In its April 3, 1995 letter, Beus provided the following notice:

Pursuant to the Lease Agreement of June 21, 1994, by and between Leo R. Beus, et al. (the Beus Group) and Cache County, there have been no payments made by Cache County since December of 1994.

Pursuant to paragraph 18 of the Lease Agreement, we exercise all rights thereunder as set forth therein, including the right to terminate.

¶ 14 Beus's letter contained no expression of "remedy or quit" as the statute requires. Instead, Beus merely noted that "no payments were made," referenced paragraph 18 of the Lease,[1] and ordered Cache County to surrender possession.

---

1. Paragraph 18 of the Lease provides:
 18. *Default.* In the event County fails to pay any rent, or other sum due hereunder within
 ten (10) days of written notice from the Beus Group, or if default shall be made in the performance of any other terms of this Agreement,

¶ 15 Accordingly, we agree with the trial court that Beus did not provide Cache County with clear, written notice that Cache County had a chance to either bring the rent current or quit the property, and thus Beus failed to meet the statutory requirements.[2]

### B. Viability of Common Law Ejectment

¶ 16 Cache County asserts we should affirm the grant of summary judgment without reaching Beus's common law ejectment cause of action because the Unlawful Detainer Statute has supplanted the common law right of ejectment in Utah.[3] Cache County relies on *American Holding Co. v. Hanson*, 23 Utah 2d 432, 464 P.2d 592 (Utah 1970). In that case, American Holding sought termination of a lease and recovery of the leased premises. *See id.* at 592–93. The court held:

> Prior decisions of this court are to the effect that Chapter 36, Title 78, U.C.A. 1953, *is the exclusive remedy for the recovery of premises held by a tenant for a term of less than life.* The case of *King v. Firm* had this to say: "A landlord who is entitled to possession must, on the refusal of the tenant to surrender the premises, *resort to the remedy given by law to secure it.*"
>
> The statute requires that a notice in writing requiring in the alternative the payment of the rent or the surrender of the detained premises shall have remained

uncomplied with for a period of three days after the service of the notice. The landlord is not entitled to maintain an action for the restitution of the premises without first having complied with the statute in giving a proper notice which complies with the terms of the statute.

*Id.* at 593 (emphasis added) (footnote omitted).

¶ 17 Although *American Holding* seems to extinguish ejectment, subsequent Utah Supreme Court cases recognize ejectment as a viable cause of action in Utah. Six years after *American Holding*, the court revisited ejectment in *Pingree v. Continental Group of Utah, Inc.*, 558 P.2d 1317 (Utah 1976). There, lessors sought damages for unlawful detainer. Lessors sent notice to lessees which stated that if deficiencies in the maintenance of the property were not corrected within thirty days, "you are hereby notified of lessors intent to forfeit, cancel and terminate this lease." *Id.* at 1322. The court concluded that while the lessor had failed to correctly use the unlawful detainer statute, a remedy at common law remained:

> The court was correct in its ruling that defendant's refusal to vacate was wrongful, after the service of the notice of forfeiture and to vacate on February 26, 1975. The amended complaint filed by plaintiffs in July was a common law action for eject-

---

and shall continue for a period of ten (10) days after written notice of such default from the non-defaulting party, then that party shall have the right to terminate this Agreement without prejudice to any of its rights at law, in equity, or pursuant to any other provision hereof.

2. Beus relies on an additional subsection of the statute to support its assertion that it had properly placed Cache County in unlawful detainer. That subsection provides:

> (1) A tenant of real property, for a term less than life, is guilty of an unlawful detainer: (a) when he continues in possession, in person or by subtenant, of the property or any part of it, after the expiration of the specified term or period for which it is let to him, which specified term or period, whether established by express or implied contract, or whether written or parol, shall be terminated without notice at the expiration of the specified term or period. . . .

Utah Code Ann. § 78–36–3(1)(a) (1996).

Under the plain language of the statute, subsection (a) applies when a tenant wrongly "con-

tinues in possession . . . after the expiration of the specified term or period for which it was let to him." *Id.*

In this case, Beus's cancellation of the lease gives it no right to rely on the "no notice" provisions of subsection (a). The "specified term" of the Lease was for ten years, from June 21, 1994 to June 20, 2004. Beus sent the notices in 1995. Thus, the notices were not sent at "the expiration of the specified term for which [the property had been] let [to Cache County]." *Id.* Accordingly, Beus cannot rely on subsection (a) to place Cache County in unlawful detainer.

3. "Generally, an action of ejectment will lie to recover the possession of leased premises where the tenant has retained possession after expiration of the term, or for nonpayment of rent or for forfeiture of the lease by breach of the conditions thereof, where it is stipulated in the lease that the lessor shall have the right to re-enter for such nonpayment of rent or breach of condition." *Hackford v. Snow*, 657 P.2d 1271, 1275 n. 5 (Utah 1982) (citation omitted).

ment. The court properly awarded plaintiffs possession of the property, and damages for the time defendant remained in possession. Damages recoverable under such circumstances are generally the reasonable rental value of the premises. The reasonable rental value was found to be $900 per month; such sum is sustained by the evidence.

*Id.* (footnote omitted).

¶ 18 *Hackford v. Snow,* 657 P.2d 1271 (Utah 1982), is consistent with *Pingree.* In that case, the Hackfords sued for unlawful detainer. The district court dismissed the unlawful detainer action and granted specific performance of a purchase option included in the lease. *See id.* at 1272. The court noted:

Generally, a lease may be unilaterally terminated prior to the expiration of its term by exercise of an option to terminate or by enforcement of a forfeiture. A forfeiture of the leasehold may result by virtue of a clause in the lease providing for forfeiture in case of breach of covenant or condition. Where such is clearly provided for, the courts will generally enforce it.

*Id.* at 1275 (footnote omitted). Further, in footnote five of the opinion, the court commented:

The forcible entry and detainer statute provides a speedy and adequate remedy against a tenant who wrongfully is in possession of land. However, it is not the exclusive remedy to oust one who is in wrongful possession. Generally, an action of ejectment will lie to recover the possession of leased premises where the tenant has retained possession after expiration of the term, or for nonpayment of rent or for forfeiture of the lease by breach of the conditions thereof, where it is stipulated in the lease that the lessor shall have the right to re-enter for such nonpayment of rent or breach of condition.

*Id.* at 1275 n. 5 (citations omitted).

■ ¶ 19 We conclude that *Pingree* and *Hackford* have clarified the supreme court's earlier statements in *American Holding.* The Unlawful Detainer Statute is not the exclusive remedy in Utah to evict a tenant. A landlord may still maintain a common law action in ejectment where the lease includes a forfeiture provision to provide the basis for the action.

¶ 20 We note that other states have recognized the continued viability of ejectment, even after statutory remedies have been promulgated. For example, the New Hampshire Supreme Court has held that lessors have the choice of remedies as between statutory detainer and common law ejectment. *See Cooperman v. MacNeil,* 123 N.H. 696, 465 A.2d 879 (1983). There, lessee MacNeil failed to make full rent payments to lessor Cooperman. *See id.* at 880. One of lessor's claims was for ejectment. *See id.* Lessee argued that the statutory scheme had superseded the common law remedy. *See id.* at 881. The New Hampshire Supreme Court disagreed. "[W]e are convinced that the statutory scheme did not displace the common-law actions of ejectment and entry. We have frequently stated that we will not construe a statute as abrogating the common law unless the statute clearly expresses such an intention." *Id.* at 881–82 (citations omitted); *see also Denecke v. Henry F. Miller & Son,* 142 Iowa 486, 119 N.W. 380, 383 (Iowa 1909); *Allen v. Houn,* 29 Wyo. 413, 213 P. 757 (Wyo.1923).

¶ 21 In sum, we conclude that a landlord may maintain a common law ejectment action in Utah to remove a tenant from the premises even if he has failed to follow the requirements of the Unlawful Detainer Statute.

## II. Ejectment

### A. Breach of Lease

■ ¶ 22 The trial court did not directly address whether Cache County had breached the lease, a necessary precondition to an ejectment action. Our review of the unambiguous terms of the Lease persuades us that Cache County did in fact breach the Lease.

¶ 23 Paragraph Eighteen of the Lease provides:

18. *Default.* In the event County fails to pay any rent, or other sum due hereunder within ten (10) days of written notice from the Beus Group, or if default shall be made in the performance of any other terms of this Agreement, and shall continue for a

period of ten (10) days after written notice of such default from the non-defaulting party, then that party shall have the right to terminate this Agreement without prejudice to any of its rights at law, in equity, or pursuant to any other provision hereof.

¶ 24 In its April 3, 1995 letter, Beus wrote: "[T]here have been no payments made by Cache County since December of 1994. Pursuant to Paragraph 18 of the Lease Agreement, we exercise all rights thereunder as set forth therein, including the right to terminate." Cache County received the letter on April 10, but failed to pay rent within ten days of receipt of Beus's letter. Beus reaffirmed its termination of the Lease in a letter sent April 20, 1995. The amount due was tendered by Cache County, postmarked April 21. On April 26, Beus rejected the rent check.

¶ 25 The terms of the Lease are clear. Accordingly, Cache County's failure to pay the rent within ten days of Beus's written notice allowed Beus to terminate the Lease under its terms.

### B. The Equitable Doctrine of Substantial Compliance

¶ 26 On appeal, Beus argues the trial court erred in barring a forfeiture of the Lease as a result of its ejectment action by applying the equitable doctrine of substantial compliance and granting summary judgment to Cache County.

¶ 27 Summary judgment is proper only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). "In determining whether the lower court correctly found that there was no genuine issue of material fact, we view the facts and inferences to be drawn therefrom in the light most favorable to the losing party." *Dwiggins v. Morgan Jewelers*, 811 P.2d 182, 183 (Utah 1991). Moreover, "[i]n reviewing a grant of summary judgment, we accord no deference to the trial court's conclusions of law and review them for correctness." *Drysdale v. Ford Motor Co.*, 947 P.2d 678, 680 (Utah 1997).

¶ 28 Although forfeitures are permitted pursuant to lease provisions, *see Hackford*, 657 P.2d at 1275, Utah's courts have generally disfavored forfeitures in landlord-tenant cases. *See, e.g., U–Beva Mines v. Toledo Mining Co.*, 24 Utah 2d 351, 354, 471 P.2d 867, 869 (1970). "The substantial compliance doctrine furthers that policy by allowing equity to intervene and rescue a lessee from forfeiture of a lease when the lessee has substantially complied with the lease in good faith." *Housing Auth. of Salt Lake City v. Delgado*, 914 P.2d 1163, 1165 (Utah Ct.App. 1996).

¶ 29 In denying forfeiture of the Lease by applying the doctrine of substantial compliance on summary judgment, the trial court principally relied on *Delgado* and *U–Beva Mines*. Although helpful, neither case is dispositive.

¶ 30 In *Delgado*, the Housing Authority of Salt Lake City (Housing Authority) challenged the trial court's decision in favor of tenant Delgado in an unlawful detainer action. We held:

[W]e believe the evidence supports the trial court's factual finding that Delgado substantially complied with the lease and its consequent ruling of nonforfeiture.

The trial court's general finding of substantial compliance implies a specific finding that a good faith payment of $57 substantially complies with a required payment of $57.96. Based on the negligible amount involved and Delgado's testimony that the omission of 96 cents was merely an oversight, this implicit finding is not clearly erroneous and, indeed, seems reasonable. No evidence exists to show that Delgado would not have promptly cured the 96–cent mistake upon request.

The general finding of substantial compliance further implies a specific finding that Delgado's delayed initiation of a trace on the money order was not a substantial breach of the lease. Delgado's testimony also supports this finding. She stated she had hoped the money order would surface on its own, and, in the meantime, she consulted attorneys regarding the matter. Once an attorney told her to "go ahead and

trace it," she initiated the trace. The trial court apparently regarded Delgado to be a credible witness and believed, based on her testimony, that she had acted in good faith to trace the money order and comply with the lease. Thus, we cannot say this implicit finding is clearly erroneous either.

*Delgado*, 914 P.2d at 1166.

¶ 31 We note that *Delgado* was decided, not on summary judgment, but after a trial on the issue of substantial compliance and that we affirmed the application of the doctrine of substantial compliance based on the trial court's factual findings. *See id.* Further, *Delgado* was a residential lease case, while the instant case involves a negotiated commercial lease between sophisticated parties. Finally, Delgado missed one payment and was only "short" ninety-six cents. *See id.* In this case, Cache County (for the second time) completely missed several monthly payments and was eleven days late in making the cure payment.

¶ 32 In *U–Beva Mines*, U–Beva leased its smelting operation to Toledo in exchange for rent and Toledo's promise to pay all applicable taxes. *See U–Beva Mines*, 471 P.2d at 868. The lease provided that "for any breach of the agreement by lessee, the lessor might terminate 60 days after written notice of intention to terminate for breach, unless the lessee had cured it in the interim." *Id.* Toledo inadvertently failed to pay a $95 tax, and on December 13, 1967, U–Beva sent a notice to Toledo which, for purposes of the supreme court's decision, was assumed to be the sixty-day notice required by the lease. *See id.* Under the lease, Toledo had until February 11, 1968 to cure its default. Toledo did not pay until February 29, 1968, eighteen days after the deadline. *See id.*

¶ 33 The Utah Supreme Court noted that although the payment was three weeks late, it would be inequitable to allow a forfeiture for a late payment of $95 when Toledo had already expended $55,000 pursuing other lease provisions. Specifically, the court held:

[W]e are constrained to believe, and so conclude, that in equity [Toledo] is relieved from any departure here, on the grounds that the defection was so minor as to invoke the offices of equity, and that at law

substantial compliance with the contract, under the circumstances, would purge an erstwhile default under a generally accepted policy against forfeiture, and that otherwise, there would be an unconscionability heretofore condemned by us, justifying the invocation of equitable principles restricting even the freedom of contracting improvidently.

*Id.* at 869 (footnotes omitted).

¶ 34 Beus argues that *U–Beva Mines* can be distinguished on its facts because Cache County's breach is not immaterial or "mere oversight" as was the case in *U–Beva Mines*. Beus points out that Cache County consistently failed to pay the monthly rent and only paid upon Beus's exercise of its termination rights under the Lease. Further, Beus argues Cache County's failure to meet its basic obligation to pay monthly rent was detrimental to the Beus Group as it was the basis of the bargain reached in the Lease agreement. In addition, we note that there was no evidence before the trial court which indicated Cache County, following the commencement of its tenancy, made substantial improvements to the property, as was the case in *U–Beva Mines*.

¶ 35 *Foundation Development Corp. v. Loehmann's, Inc.*, 163 Ariz. 438, 788 P.2d 1189 (1990), articulates well when trial courts should employ the doctrine of substantial compliance to prevent forfeiture of a lease. In that case, a landlord brought an action under a lease forfeiture clause against a commercial tenant owing $3000 in rent. *See id.* at 1191–92. The landlord sent a notice indicating outstanding charges, and a check was tendered by the tenant three days late. *See id.* Noting that the landlord was not seeking rent, but rather forfeiture, the court did not allow forfeiture of the lease, and noted, after an exhaustive survey of case law:

[A]n overwhelming majority of courts [has] concluded, without reference to a specific statutory provision, that a lease may not be forfeited for a trivial or technical breach even where the parties have specifically agreed that "any breach" gives rise to the right of termination. These courts note the sophistication and complexity of most

business interactions and are concerned, therefore, that the possibilities for breach of a modern commercial lease are virtually limitless. In their view, the parties to the lease did not intend that every minor or technical failure to adhere to complicated lease provisions could cause forfeiture. Accordingly, nearly all courts hold that, regardless of the language of the lease, to justify forfeiture, the breach must be "material," "serious," or "substantial."

. . . .

Having been squarely presented with the question for the first time, we decline to hold that any breach, no matter how trivial or insignificant, can justify a forfeiture. Nor do we believe such a rule could long survive. Trivial or not, the delay in paying the rent here was at most three days.

*Id.* at 1196 (citations and footnotes omitted).

¶ 36 Under this view of the substantial compliance doctrine, a trial court should determine the *materiality* of the breach, and then decide whether the breaching party had substantially complied with the "contract" (the lease). Guidance as to when a breach is "material" is provided in the Restatement (Second) of Contracts.

¶ 37 According to the Restatement, the following factors can assist a court in determining the "materiality" of a breach:

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Restatement (Second) of Contracts: Circumstances Significant in Determining Whether A Failure is Material § 241 (1981).

¶ 38 In the instant case, the trial court found:

The lease in the present case arose from a dispute over land occupied by Cache County by which the Beus Group contends it purchased in 1986. In exchange for Cache County's quitclaim of its interest in the property, the parties entered into a ten year lease agreement with rental payments of $500 per month—an amount substantially below the market rate. Although the County has been less than diligent in making its rental payments, its tender, in good faith, of $2000 to cover the amount of default a mere one day after the ten day period required by the contract is at best a minor technical violation of the lease agreement and constitutes substantial compliance. Requiring the County to forfeit its lease for such a trivial breach is a result that far exceeds any damages suffered by the Beus Group and would be contrary to fundamental principles of equity and fairness.

¶ 39 Beus contends that even if the doctrine of substantial compliance should be considered in this forfeiture action, the court erred in granting summary judgment to Cache County, by holding as a matter of law that Cache County had substantially complied with the Lease. Beus claims there was no evidence properly before the court to support the trial court's finding that Cache County would suffer damages if the Lease were terminated far in excess of those suffered by Beus by continuing the Lease. Beus further alleges that there are genuine issues of material fact as to the adverse consequences Cache County will suffer if the Lease is terminated compared to the damages suffered by the Beus Group due to Cache County's default. We agree with both propositions.

¶ 40 We have previously noted that the issue of whether a breach is substantial enough to foreclose the application of equitable principles is particularly fact sensitive. *See Delgado,* 914 P.2d at 1165 (citing *Hackford* at 1274). Further, substantial performance is an equitable doctrine which should be sparingly employed as it defeats the bargained-for legal rights of the parties.

Certainly, it should be employed on summary judgment only in cases where the equities go only one way—which is not the case here. There were sufficient facts before the trial court on summary judgment to prevent eject-ment of Cache County as a matter of law. However, there were clearly disputed issues of fact as to the adverse consequences that would be suffered by the parties and the equities to require a trial on the issue of substantial compliance.

¶ 41 We conclude there are genuine and material fact issues in this matter concerning the adverse consequences of forfeiture suf-fered by Cache County in relation to the damages suffered by Beus by Cache Coun-ty's repeated failure to pay rent. These facts were not explicitly explored *by either party*. Accordingly, we reverse the entry of sum-mary judgment in favor of Cache County and remand for a trial on the issue of substantial compliance in light of the law we have set out above.

### III. Attorney Fees on Appeal

¶ 42 Paragraph Sixteen of the Lease pro-vides that "[t]he substantially prevailing par-ty in any litigation hereunder shall be enti-tled to its reasonable attorney's fees and court costs, including appeals, if any." Be-cause Beus has substantially prevailed on appeal, we award Beus its reasonable attor-ney fees incurred on appeal to be determined by the trial court on remand.

### CONCLUSION

¶ 43 First, we conclude that because Beus did not provide Cache County with clear, written notice that Cache County had a chance to either bring the rent current or quit the property, it failed to meet the Un-lawful Detainer Statute's notice require-ments. Second, we hold the Unlawful De-tainer Statute is not an exclusive remedy in Utah for removing a tenant; a landlord may still maintain a common law action in eject-ment if the lease includes a forfeiture clause to provide a basis for the action. Third, we conclude Cache County's failure to pay rent within ten days of Beus's written notice al-lowed Beus to terminate the Lease. Finally, we conclude that there are genuine and ma-terial fact issues concerning whether Cache County substantially complied with the Lease, thus preventing forfeiture. Accord-ingly, we reverse the entry of summary judg-ment in favor of Cache County and remand for a trial on the issue of substantial compli-ance. We also conclude Beus has substan-tially prevailed on this appeal, and award it reasonable attorney fees incurred on appeal.

¶ 44 Reversed and remanded for proceed-ings consistent with this opinion.

¶ 45 WE CONCUR: MICHAEL J. WILKINS, Presiding Judge, and RUSSELL W. BENCH, Judge.

