**2023 UT App 102**

## THE UTAH COURT OF APPEALS

PATRICIA BELNAP JOHNSON,
Appellee,
*v.*
JENNIFER SCHNABEL AND EVOLUTION YOGA,
Appellants.

Opinion
No. 20210655-CA
Filed September 14, 2023

Fourth District Court, Provo Department
The Honorable Darold J. McDade
No. 200400173

Justin D. Heideman and Justin R. Elswick,
Attorneys for Appellants

David D. Jeffs, Attorney for Appellee

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and JOHN D. LUTHY
concurred.

OLIVER, Judge:

¶1     A yoga studio in Orem, Utah, became a center of controversy after a dispute arose over the terms of its commercial lease (Lease). Jennifer Schnabel signed the Lease—in the name of evolution yoga[1]—with Patricia Belnap Johnson in her capacity as Trustee of the Patricia Belnap Johnson Trust. But evolution yoga did not exist. After Schnabel filed a petition for personal bankruptcy—a material default under the terms of the Lease—Johnson asked the district court to declare the Lease terminated. Schnabel counterclaimed for forcible detainer and intentional interference with economic relations. The district court granted

---

1. We refer to "evolution yoga" as it appears in the Lease.

summary judgment to Johnson, finding that Schnabel was personally liable as the "Tenant" and that her bankruptcy petition was a material default, entitling Johnson to terminate the Lease. The court denied summary judgment on Schnabel's counterclaims and dismissed them, awarding attorney fees and costs to Johnson. We affirm the decisions of the district court.

BACKGROUND

¶2 Schnabel and Johnson signed the Lease, which designated the use of the premises "solely for yoga and other fitness related classes" and set forth a sixty-four-month term. Each page of the Lease displayed a footer in the bottom right corner stating:

LEASE AGREEMENT
Landlord: The Patricia Belnap Johnson Trust
Tenant: evolution yoga

¶3 Section 18.2(b) of the Lease contemplated that "[i]n the event of any . . . material default or breach by Tenant," the Trust would have the right to "Terminate Tenant's right to possession by notice to Tenant." Section 18.1 identified several material defaults, including "the filing by or against Tenant of a petition to have Tenant adjudged [] bankrupt or of a petition for reorganization or arrangement under any law relating to bankruptcy (unless, in the case of a petition filed against Tenant, the same is dismissed within sixty (60) days)."

¶4 The last page of the Lease contained the signature block. "Landlord" was identified as the Patricia Belnap Johnson Trust and signed by Johnson herself as "Its . . . Trustee." Schnabel printed her name on the "Tenant" line on behalf of the "Company: evolution yoga" and signed as "Its Owner." Schnabel also signed a Guarantee on the Lease which listed both "Jennifer Schnabel" and "evolution yoga" as the "Tenant."

¶5    But evolution yoga did not exist when the Lease was signed. And eight days later, Schnabel incorporated a different entity, InBalance Yoga (InBalance). InBalance made the rental payments to Johnson and, three years later, InBalance obtained Johnson's permission to sublease the studio to a different entity, InBalance Yoga and Wellness (Yoga & Wellness). The sublease agreement designated InBalance as the "Sublandlord" and Yoga & Wellness as the "Subtenant." Johnson later claimed she never knew InBalance was a corporation and was not aware of the capacity in which Schnabel signed the sublease on behalf of InBalance.

¶6    While the studio was sublet to Yoga & Wellness, Schnabel filed a petition for bankruptcy based on personal consumer debt. But shortly after filing, Schnabel brought an unopposed motion to dismiss her petition, which the bankruptcy court granted without prejudice.

¶7    One month later, Johnson learned about Schnabel's bankruptcy petition. Johnson sent a letter by certified mail to "Jennifer Schnabel dba evolution yoga" notifying her that the bankruptcy petition put her in material breach of section 18.1(e) of the Lease. Johnson informed Schnabel that because of the breach, the Lease was terminated as of that day. Johnson then entered into a new agreement on behalf of the Trust directly with Yoga & Wellness to lease the studio. Schnabel sent a letter back to Johnson alleging Johnson had violated the Lease by announcing early termination and creating the new agreement with Yoga & Wellness.

¶8    Johnson then filed a complaint in district court, seeking judgment declaring the Lease terminated and returning possession of the studio back to the Trust. Johnson's complaint was answered by "Schnabel and evolution yoga dba InBalance Yoga" as "Defendants." Schnabel denied any liability to Johnson and raised thirty-five affirmative defenses. Schnabel also asserted two counterclaims: first, that Johnson had committed forcible

detainer under Utah Code section 78B-6-814 because she terminated the Lease without "judicial process," and second, that Johnson's new lease with Yoga & Wellness was an intentional interference with Schnabel's own economic relations with Yoga & Wellness.

¶9 Johnson filed a motion for summary judgment, asking the court to declare the Lease terminated because its terms clearly defined a bankruptcy petition filed by the Tenant as a material default, Schnabel had filed just such a petition, and Johnson was entitled to remedies for that default—including termination of the Lease. Schnabel opposed summary judgment, arguing she was not the Tenant under the Lease because she signed for "evolution yoga d/b/a InBalance" in her representative capacity and thus her personal bankruptcy petition did not constitute a material default. Schnabel further argued that even if she were the Tenant, the bankruptcy petition had not been a material default because she had otherwise substantially complied with the lease terms. She simultaneously filed a cross-motion for partial summary judgment on her counterclaims.

¶10 After a hearing on the cross-motions for summary judgment, the court concluded as a matter of law that the Lease unambiguously designated Schnabel as the Tenant. The court found it undisputed that Schnabel had filed for bankruptcy, which was a material default under the plain language of the Lease. The court granted Johnson's motion for summary judgment, noting the Lease "is what it is. It's specific. It allows plaintiff to do what they've done here." The court also denied Schnabel's motion for partial summary judgment and dismissed her counterclaims.

¶11 Johnson prepared a Proposed Order memorializing the judgment, but Schnabel objected. Schnabel then filed a motion for modification of the ruling, arguing the court "made one or two legal errors, which must be revised." After another hearing, the court overruled Schnabel's objections to the Proposed Order and

denied her motion for modification of its ruling. The court explained that it was "simply relying on the list of undisputed facts and the arguments that were initially set forth" and that, based on those facts, granting summary judgment to Johnson was appropriate.

¶12   Thereafter, the court issued its written order granting Johnson's motion for summary judgment, denying Schnabel's cross-motion for summary judgment, dismissing her counterclaims, and awarding attorney fees to Johnson.

ISSUES AND STANDARD OF REVIEW

¶13   On appeal, Schnabel challenges both the district court's grant of summary judgment to Johnson on Johnson's claims and the dismissal of her counterclaims on summary judgment. "An appellate court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (cleaned up).

ANALYSIS

I. The Tenant Under the Lease

¶14   Schnabel argues the district court erred in concluding the Lease unambiguously designated her as the Tenant. When interpreting a contract, "if the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Mind & Motion Utah Invs., LLC v. Celtic Bank Corp.*, 2016 UT 6, ¶ 24, 367 P.3d 994 (cleaned up). A contract is ambiguous "if it is capable of more than one reasonable interpretation because of uncertain

meanings of terms, missing terms, or other facial deficiencies." *In re Western Ins. Co.*, 2022 UT 38, ¶ 36, 521 P.3d 851 (cleaned up).

¶15    Here, at first glance, the plain terms of the Lease unambiguously designate evolution yoga as the Tenant. "Tenant" is identified as evolution yoga in the footer on every page of the Lease. And the signature block appears as follows:

> TENANT:
> By: Jennifer Schnabel
> Company: evolution yoga
> By: Jennifer Schnabel
> Its: Owner

But while the Lease may be facially unambiguous, evolution yoga did not exist when it was signed. By necessity, someone must be the Tenant under the Lease, and that someone is Schnabel.

¶16    Under section 16-10a-204 of the Utah Code, "All persons purporting to act as or on behalf of a corporation, knowing there was no incorporation . . . are jointly and severally liable for all liabilities created while so acting." Utah appellate courts have consistently held that "the individual who signs a contract in the name of a nonexistent corporation can be a party to the contract" and will become a party "by assuming to act as a corporation without authority." *Gardner v. Madsen*, 949 P.2d 785, 789 (Utah 1997) (cleaned up) (holding the individual who signed a contract for a houseboat on behalf of an involuntarily dissolved corporation personally liable under the contract); *see also Smith & Edwards v. Golden Spike Little League*, 577 P.2d 132, 134 (Utah 1978) (holding that "where a person enters into a contract with another, under a representation that he is acting as agent for a principal, when there is in fact no such principal, he renders himself personally liable upon the contract" even when "the purported agent had no wrongful intent"); *American Vending Services, Inc. v. Morse*, 881 P.2d 917, 923 (Utah Ct. App. 1994) (imposing joint and several liability on defendants who

purchased a car wash on behalf of a nonexistent corporation for "all the debts and liabilities that they incurred or that arose as a result of their actions before the corporation legally existed").

¶17    Here, Schnabel signed the Lease on behalf of evolution yoga. But evolution yoga did not exist. Because Schnabel purported to act in a representative capacity on behalf of a nonexistent entity, the district court did not err in finding she was the Tenant under the Lease.

## II. Material Default

¶18    Next, Schnabel argues her personal petition for bankruptcy was not a material default under the Lease because she is not the Tenant, and even if she were, the court erred in not evaluating her actions under the equitable doctrine of substantial compliance.

¶19    Where a lease is unambiguous, a court determines the parties' intent from its plain language. *See Mind & Motion Utah Invs., LLC v. Celtic Bank Corp.*, 2016 UT 6, ¶ 24, 367 P.3d 994. Here, the Lease was unambiguous, and the district court did not err in interpreting it based on its plain terms. Section 18.1(e) explicitly defined "filing by or against Tenant of a petition to have Tenant adjudged [] bankrupt or of a petition for reorganization or arrangement under any law relating to bankruptcy" as a "material default." As set forth above, Schnabel is the Tenant under the Lease. It is undisputed that she filed a personal petition for bankruptcy. By the Lease's plain terms, her voluntary petition for bankruptcy was a material default.

¶20    Despite the Lease's clear definition of material default, Schnabel argues the district court should have evaluated her actions under the equitable doctrine of substantial compliance. Substantial compliance allows equity to "intervene and rescue a lessee from forfeiture of a lease when the lessee has substantially complied with the lease in good faith." *Cache County v. Beus*, 1999 UT App 134, ¶ 28, 978 P.2d 1043 (cleaned up). But this doctrine

cannot be applied in cases where a breach is "material, serious, or substantial." *Id.* ¶ 35 (cleaned up). And it should be "sparingly employed as it defeats the bargained-for legal rights of the parties." *Id*. ¶ 40.

¶21 Utah courts have utilized substantial compliance where parties' failures to precisely comply with the terms of a lease agreement are "negligible." *Housing Auth. of Salt Lake City v. Delgado*, 914 P.2d 1163, 1166 (Utah Ct. App. 1996) (concluding inadvertent underpayment of rent by ninety-six cents was not material, and the tenant had substantially complied); *see also U-Beva Mines v. Toledo Mining Co.*, 471 P.2d 867, 869 (Utah 1970) (concluding failure to pay an $87 tax was "so minor" in relation to the $55,000 paid under the lease as to "invoke the offices of equity"); *Grassy Meadows Sky Ranch Landowners Ass'n v. Grassy Meadows Airport, Inc.*, 2012 UT App 182, ¶ 15, 283 P.3d 511 (concluding some "normal wear and tear" and maintenance of airport in "reasonably good working order" was not a material breach and evinced good faith efforts to substantially comply).

¶22 But in *Red Cliffs Corner, LLC v. J.J. Hunan, Inc.*, 2009 UT App 240, 219 P.3d 619, this court declined to evaluate a lessee's repeated late rental payments for substantial compliance, instead following the lease agreement's own definition of material default. *Id*. ¶¶ 25–26. There, the lease defined as a material default the failure to pay rent after notice from the landlord. *Id*. ¶ 24. And the agreement provided that the landlord could terminate the lease based on repeated defaults, even if the tenant had cured the default, and even if the default was not considered material. *Id.* We held the lease's definition of a default governed because the parties had "bargained for the right" to terminate based on that default. *Id*. ¶ 26.

¶23 Similarly, the Lease here explicitly defined the filing of a bankruptcy petition as a material default. And Schnabel's voluntary petition for bankruptcy is not the type of "trivial or technical" breach, *see Beus*, 1999 UT App 134, ¶ 35, that warrants

the application of equity. Intentionally filing for bankruptcy in violation of explicit terms in the Lease is not akin to making a good faith effort but inadvertently failing to exactly comply. Because evaluating Schnabel's actions for substantial compliance would defeat the explicitly defined and bargained-for definition of material default in the Lease, the district court did not err in declining to do so.

¶24 The district court correctly interpreted the Lease according to its plain language. This plain language defined a bankruptcy petition filed by the Tenant as a material default. Schnabel is the Tenant. Thus, her petition for bankruptcy was a material default, and the district court did not err in so concluding.

## III. Schnabel's Counterclaims

### A. Forcible Detainer

¶25 Under Utah's forcible detainer statute, a "forcible detainer" occurs when a landlord holds and keeps "by force, or by menaces and threats of violence, the possession of any real property." Utah Code § 78B-6-801(2)(a). To recover under this statute, a plaintiff must show (1) a forcible detainer occurred and (2) she was in actual, peaceable possession, or entitled to possession at the time. *Id*. § 78B-6-809(1).

¶26 No forcible detainer occurred here. Johnson's letter notifying Schnabel about her lawful termination of the Lease did not exclude Schnabel from the property by "force," "menaces," or "threats of violence." Schnabel nonetheless argues the letter was a forcible detainer because it violated section 78B-6-814 of the forcible detainer statute, which prevents a landlord from "exclud[ing] a tenant from the tenant's premises in any manner except by judicial process." But section 78B-6-814 is inapplicable here. The forcible detainer statute is concerned with possessory interests in property. *See Osguthorpe v. Wolf Mountain Resorts, LC*, 2010 UT 29, ¶ 22, 232 P.3d 999 (noting the forcible detainer and

unlawful detainer provisions "evidence a legislative intent to create a mechanism for quickly and clearly resolving conflicts over *lawful possession of property* between landowners and tenants") (emphasis added); *Bel Courtyard Invs., Inc. v. Wolfe*, 2013 UT App 217, ¶ 17, 310 P.3d 747 (the forcible detainer statute "prevents landlords from disturbing *actual possession of property* except by legal process") (cleaned up) (emphasis added).

¶27 As Schnabel herself concedes, she was not "physically in possession" of the studio when she received Johnson's letter. She had subleased the studio to Yoga & Wellness. And a lease—or, in this case, a sublease—generally "conveys an interest in land and transfers possession." *Osguthorpe*, 2010 UT 29, ¶ 25 (cleaned up). In *Osguthorpe*, our supreme court determined a landlord had retained a possessory interest in property because the lease limited the lessee's use of the property and did not allow the lessee to exclude others from the property. *Id*. ¶ 27. But here, the sublease agreement stated InBalance, as the Sublandlord, leased "*all* of the [p]remises" to Yoga & Wellness as the Subtenant. (Emphasis added.) Because Yoga & Wellness was not limited in its use of the studio, Schnabel did not retain a possessory interest in it. Thus, section 78B-6-814 does not apply to Johnson's termination letter, and the letter was not a forcible detainer. And without a possessory interest in the studio, Schnabel cannot establish the second element of the forcible detainer statute. Thus, the district court did not err in denying summary judgment and dismissing this counterclaim.

B.     Intentional Interference with Economic Relations

¶28 Schnabel also argues the district court erred in dismissing her counterclaim against Johnson for intentionally interfering with Schnabel's economic relations with Yoga & Wellness. Intentional interference requires a showing "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) by improper means, (3) causing injury to the plaintiff." *Eldridge v. Johndrow*, 2015 UT 21, ¶ 70, 345

P.3d 553 (cleaned up). At minimum, Schnabel cannot establish that Johnson terminated the Lease through improper means.

¶29    As we concluded above, Schnabel materially defaulted under the Lease, empowering Johnson to terminate it and sign a new lease with Yoga & Wellness. Accordingly, Johnson's termination letter was not an improper means to terminate the Lease. Thus, Schnabel cannot show the necessary elements of intentional interference with economic relations. The district court did not err in denying summary judgment and dismissing this counterclaim.

## IV. Attorney Fees

¶30    Finally, both parties request an award of attorney fees on appeal pursuant to section 23.5 of the Lease,[2] which states:

> If Tenant or Landlord shall bring any action for any relief against the other, declaratory or otherwise, arising out of this Lease, including any suit by Landlord for the recovery of rent or possession of the Premises, the losing party shall pay the successful party a reasonable sum for attorney's fees whether or not such action is prosecuted to judgment.

"A party entitled by contract or statute to attorney fees below and that prevails on appeal is entitled to fees reasonably incurred on appeal." *Federated Capital Corp. v. Haner*, 2015 UT App 132, ¶ 19, 351 P.3d 816 (cleaned up). Because Johnson was awarded her fees below pursuant to the Lease and she is the prevailing party on

---

2. Schnabel also argues that the district court's award of attorney fees to Johnson should be reversed. But because we affirm the district court's grant of summary judgment to Johnson, we also affirm the award of attorney fees below.

appeal, we grant Johnson's request for fees in accordance with this provision and deny Schnabel's request for fees.

CONCLUSION

¶31   We conclude that the district court did not err when it determined that Schnabel was the Tenant, that her personal bankruptcy petition constituted a material default under the Lease, and that Johnson properly terminated the Lease. We also conclude that the district court did not err when it determined that Schnabel could not show the essential elements of her counterclaims. We affirm the rulings of the district court in all respects, award Johnson her attorney fees on appeal, and remand for the district court to determine the amount of this award.

———————